IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 38420

| STATE OF IDAHO, | ) | 2011 Unpublished Opinion No. 742 |
|---|---|---|
| | ) | |
| Plaintiff-Respondent, | ) | Filed: December 12, 2011 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| SALLY A. SMELSER, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Jerome County. Hon. John K. Butler, District Judge; Hon. Thomas H. Borresen, Magistrate.

Order of the district court, on intermediate appeal from the magistrate division, affirming judgment of conviction for driving under the influence, affirmed.

Rockstahl Law Office, Chtd.; Joe Rockstahl, Twin Falls, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

Sally A. Smelser appeals from the judgment of conviction entered by the magistrate upon a jury verdict finding her guilty of misdemeanor driving under the influence. Specifically, she contends the district court, acting in its appellate capacity, erred in declining to review the magistrate's denial of her motion to dismiss, finding the evidence was sufficient to support her conviction, and denying her request for a new trial that was based on alleged prosecutorial misconduct during closing argument. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

At approximately 5:50 a.m. one Saturday morning in Twin Falls, Idaho, Deputy Jason Summers noticed the taillights of a vehicle off the roadway in the surrounding sagebrush. As he approached to investigate, he noticed "heavy black marks" crossing the roadway diagonally, leading to the area where the taillights were. As the vehicle began to pull back onto the road,

Deputy Summers initiated a stop. Smelser, the driver, indicated she had fallen asleep while driving home from work in Wendell where she was a teacher. She stated she had worked all night because she had recently been placed on probation at work and needed to catch up.

Deputy Summers noticed Smelser seemed confused and was delayed in her responses. She was also "shuffling around the front of her vehicle while sitting there," "messing with stuff in the vehicle," and mumbling about her problems at work. Deputy Summers asked Smelser for her driver's license, registration, and proof of insurance. After a period of time, she handed him her debit card rather than her driver's license and then began searching through what appeared to be children's schoolwork on her front seat in search of her registration and insurance. After approximately ten minutes, Smelser finally gave Deputy Summers her proof of insurance which had been located on her visor. During this time, she continued to talk about "off the wall things."

Concerned that Smelser had been driving under the influence, Deputy Summers asked her if she was taking any medications. Smelser stated that earlier that morning she had taken Klonopin, which she described as a muscle relaxer, and Lyrica "for nerves." Deputy Summers then asked Smelser to exit her vehicle and noticed Smelser was struggling with her balance, her eyes were red, watery, and bloodshot, and her pupils were dilated, which indicated to him that "something's in her system." He asked her to perform three field sobriety tests, which included observing her eyes and gaze, walking and turning along a straight line, and balancing on one foot. Deputy Summers testified in detail at trial as to how Smelser had failed each of these tests.

Based on Smelser's behavior, her inability to successfully complete the field sobriety tests, and her admission to having taken several prescription medications earlier that morning, Deputy Summers arrested Smelser for driving under the influence. After her arrest, Smelser stated she had also taken a dosage of Concerta that morning to treat symptoms of attention deficit disorder. Deputy Summers found an unmarked bottle of pills in her vehicle and then found Lyrica, Darvocet (a pain medication), Klonopin, Concerta, and Xanax (an anti-anxiety medication) in Smelser's purse.

Deputy Summers administered a breathalyzer test, which was negative, and then transported Smelser to the hospital to obtain a urine sample for drug testing. Smelser's urine tested positive for methylphenidate and venlafaxine, the former a "stimulatory type drug" used to treat narcolepsy and attention deficit disorder, which may include Concerta and can cause

2

dizziness and unsteadiness, and the latter an anti-depressant known as Effexor, which may cause dizziness and confusion.

Prior to trial, Smelser filed a motion to dismiss on the basis that the hearing officer in her related administrative driver's license suspension case had declined to uphold the suspension of her license, concluding that all of the statutory requirements had not been met to do so. After a hearing, the magistrate denied the motion and the case proceeded to trial. At trial, the forensic scientist, who performed the laboratory tests of Smelser's urine sample, testified that neither Klonopin nor Lyrica were detected, but Klonopin can only be detected in significant doses and the laboratory was not yet able to test for Lyrica because it was such a new drug. The scientist testified Klonopin is a central nervous system depressant with possible side effects of dizziness, confusion, drowsiness, blurred vision, and incoordination. The possible side effects of Lyrica include sleepiness, dizziness, and impairment of motor skills, and the drug includes a warning that new users should avoid driving and/or operating heavy machinery until they learn how it affects them. Further, the forensic scientist testified Lyrica and Klonopin taken together could produce an additive effect, an effect that can be even further exacerbated if the person was fatigued.

The jury found Smelser guilty of driving under the influence, Idaho Code § 18-8004, after which she filed a motion of acquittal based on the prosecutor's alleged misstatement of the State's burden of proof during its closing argument. The magistrate denied the motion, noting there had been no objection at trial. Smelser appealed to the district court, arguing the magistrate erred in denying her motion to dismiss, there was insufficient evidence to support the jury verdict, and she was entitled to a new trial due to prosecutorial misconduct in closing argument. The district court denied relief, concluding the magistrate's denial of Smelser's motion to dismiss was not reviewable, the jury verdict was supported by substantial and competent evidence, and any misconduct by the prosecutor was harmless. Smelser now appeals.

## II.

## ANALYSIS

Smelser contends the district court erred in three respects: (1) in declining to review her claim that the magistrate erred in denying her motion to dismiss; (2) in concluding there was substantial competent evidence from which a jury could find her guilty of driving under the influence; and (3) in denying her motion for a new trial that was based on allegations of

prosecutorial misconduct. On review of a decision of the district court, rendered in its appellate capacity, we review the decision of the district court directly. *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008); *State v. DeWitt*, 145 Idaho 709, 711, 184 P.3d 215, 217 (Ct. App. 2008). We examine the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *Id.* If those findings are so supported, and the conclusions follow therefrom, and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure. *Id.*

## A.     Motion to Dismiss

On appeal, Smelser contends the district court erred in denying review of the magistrate's denial of her motion to dismiss filed prior to trial. Smelser filed the motion to dismiss prior to trial, claiming her criminal charge should be dismissed because the hearing officer in her related administrative driver's license suspension case had concluded that all of the requirements for suspension of her license, as set forth in Idaho Code §§ 18-8002 and 18-8002A, had not been met. The magistrate characterized the issue as a claim of lack of evidence or probable cause to support the charge and denied the motion after concluding there was sufficient evidence presented, even absent testimony of a drug recognition expert. After Smelser was convicted of the charge by a jury, she appealed the denial of her motion to dismiss to the district court, contending the lack of a drug recognition expert required dismissal of her case. The district court, however, also characterized this as a claim of insufficient evidence to establish probable cause and, therefore, based on well-settled case law, declined to address the merits of the issue given that Smelser had been convicted of the charge following a jury trial.[1]

On appeal to this Court, Smelser claims the district court erred in denying review of the motion to dismiss, but only argues (briefly) that the magistrate should not have denied her motion to dismiss because it should have found, based on the findings of the hearing officer in her related administrative driver's license suspension case that all of the statutory requirements for suspension of her license were not met, the criminal charge should be dismissed as well. However, as the State points out, Smelser fails to address the basis of both the magistrate's and

---

[1]     *See e.g., State v. Sibley*, 138 Idaho 259, 262, 61 P.3d 616, 619 (Ct. App. 2002) (holding that where a defendant has been convicted following a fair trial, an appellate court will not re-examine the evidence supporting probable cause).

district court's rulings, both of which were based on characterization of the issue as one challenging the sufficiency of the evidence to establish probable cause. Further, even if we were to reach the argument she advances on appeal, she has provided no argument or authority for the proposition that the hearing officer's findings required dismissal of her *criminal* charge. As such, we will not address the issue further. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996) (holding that a party waives an issue on appeal if either authority or argument is lacking).

**B.      Sufficiency of the Evidence**

Smelser contends the district court erred in concluding the jury verdict was supported by substantial and competent evidence. Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

Here, the jury was instructed that in order to find Smelser guilty of driving under the influence, the State was required to prove beyond a reasonable doubt that, on the date in question, she (1) was driving or in actual physical control of a motor vehicle, (2) on a highway, street, or bridge or on public or private property open to public use, (3) while under the influence of a combination of alcohol or drugs or an intoxicating substance. On appeal, Smelser challenges the final element, arguing the State failed to present sufficient evidence to prove her driving was impaired by either Klonopin or Lyrica because the only drug detected in her blood that she admitted to taking was Concerta and the lab was unable to test for either Klonopin or Lyrica. She contends a drug recognition evaluator would have provided the "best proof" in her case and points out that while Deputy Summers testified as to her pupil size, he did not testify as to whether her pupils were altered from their regular size or appearance. In addition, she argues

there was evidence presented that she was fatigued from staying up all night, she has a lazy eye, and the police cruiser lights were reflecting on her--all of which could explain her driving off the road and subsequent failure of the field sobriety tests.

Smelser's claim on appeal fails because even absent a positive lab test for Klonopin or Lyrica, there was sufficient evidence presented by which a reasonable trier of fact could conclude she was driving under the influence of a drug or drugs she admitted to consuming. There are two ways the State may prove driving under the influence: (1) by showing under a totality of the evidence that a defendant was driving under the influence, which encompasses circumstantial evidence of impaired driving ability or other observable symptoms of intoxication; or (2) by evidence the defendant drove with a blood alcohol level exceeding the legal limit. *State v. Barker*, 123 Idaho 162, 163-64, 845 P.2d 580, 581-82 (Ct. App. 1992). In regard to the first approach, Idaho Code § 18-8004 does not require that a driver have a certain quantity of drugs in his or her system in order to be guilty of driving under the influence; rather, a violation of the statute turns upon the effect the drugs, or combination of drugs and alcohol, have on the individual's ability to safely operate a vehicle, not upon any quantification of the amount of a drug in the bloodstream. *State v. Lesley*, 133 Idaho 23, 26, 981 P.2d 748, 751 (Ct. App. 1999).

In this case, the State proceeded under the first method, as Smelser's breathalyzer test was negative and the State's theory of the case was that Smelser was under the influence of prescription medications that impaired her ability to drive. A review of the record shows there was substantial and competent evidence to support this theory, namely Deputy Summer's testimony regarding Smelser's admission that she had taken Klonopin, Lyrica, and Concerta and his observations regarding her driving, appearance, and demeanor, and the forensic scientist's testimony regarding the side effects of the drugs Smelser admitted to taking. Specifically, Deputy Summers testified he observed Smelser's vehicle off the road in the sagebrush and saw marks on the road indicating she had crossed the highway and run off the road. Upon making contact with her, he noticed she seemed confused, was delayed in her responses, was "shuffling" around the front of her vehicle, and was mumbling about problems at work. Further, she had difficulty producing her license, registration, and proof of insurance, handing the officer her debit card instead and taking approximately ten minutes to accomplish the task, all the while continuing to talk about "off the wall things." After telling Deputy Summers she had recently

6

taken Klonopin and Lyrica, she failed all three field sobriety tests and exhibited dilated pupils and red, watery, bloodshot eyes. She then told the officer she had also taken Concerta.

The forensic scientist testified the side effects of Klonopin are "dose-related" and can include dizziness, confusion, drowsiness, blurred vision, and lack of coordination. Similarly, the side effects of Lyrica may include sleepiness and dizziness, and a person taking it should not drive until they "appreciate how this particular drug affects them." As the forensic scientist testified, both drugs act as central nervous system depressants and when taken together, and while someone is fatigued, would have an additive effect.

Despite a lack of testimony from a drug recognition expert, we conclude the above-described testimony--regarding Smelser's appearance, unusual behavior, failure of field sobriety tests, and admission of taking drugs the forensic scientist testified could produce side effects impairing driving ability--comprised sufficient evidence upon which a reasonable trier of fact could find Smelser guilty of driving under the influence.[2] *Accord State v. Bronnenberg*, 124 Idaho 67, 70-71, 856 P.2d 104, 107-08 (Ct. App. 1993) (holding that even where there was no definitive test of appellant's blood alcohol level, there was sufficient circumstantial evidence to find her guilty of driving under the influence where she admitted to drinking alcohol, the officer detected the odor of alcohol after stopping her, she could not remember the alphabet and could not recall or follow simple instructions, and the jury was not required to accept her alternate explanations for this impairment).

## C.    Prosecutorial Misconduct

Smelser argues the district court erred in determining the prosecutorial misconduct during closing argument was harmless. Specifically, she contends the prosecutor committed misconduct rising to the level of fundamental error by misstating the applicable burden of proof.

A closing argument may not misrepresent the law or the reasonable doubt burden. *State v. Troutman*, 148 Idaho 904, 910, 231 P.3d 549, 555 (Ct. App. 2010). However, Smelser

---

[2]    To the extent Smelser claims the evidence was insufficient because she presented other evidence as an alternative explanation for her failure of the field sobriety tests, including for example, the fact she has a "lazy eye," her claim fails. The jury clearly rejected Smelser's explanations, a prerogative afforded it as the finder of fact. *See State v. Lesley*, 133 Idaho 23, 27, 981 P.2d 748, 752 (Ct. App. 1999) (noting that while Lesley offered alternative explanations for the findings made by the drug recognition expert, the jury obviously did not accept her characterization of the events and test results, and it was for the jury, not the appellate court, to decide such issues of credibility).

concedes she did not object to the statement and, thus, it must be analyzed under the fundamental error rubric. Pursuant to *State v. Perry*, 150 Idaho 209, 228, 245 P.3d 961, 980 (2010), if an alleged error was not followed by a contemporaneous objection, in order to show fundamental error the defendant bears the burden of persuading the appellate court that the alleged error (1) violates one or more of the defendant's unwaived constitutional rights; (2) plainly exists (without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision); and (3) was not harmless. If the defendant persuades the appellate court the complained of error satisfies this three-prong inquiry, then the appellate court shall vacate and remand. *Id.*

Here, Smelser contends the prosecutor misstated the burden of proof during closing argument when the prosecutor told the jury "[y]ou get to use your reasoning in this and say, based on the facts that I see here today, *I believe it is more reasonable that she committed this crime than not*." (Emphasis added.) Defense counsel did not object, but addressed the prosecutor's statement at length during the defense's closing argument, stating:

> One glaring thing that stands out among some others is the prosecutor's characterization of reasonable doubt, which is a mischaracterization of reasonable doubt. She argued to you that you decide what seems more reasonable, that's what you decide here, that's not the standard, that's a standard in a civil case. That's more probable than not, that is in no way, shape or form the standard in a criminal case.
>
> The standard in a criminal case is beyond a reasonable doubt. The only standard that is close to that, which is somewhat higher, is the civil standard of clear and convincing evidence, which is used in fraud cases. More likely than not, more reasonable than not, that's 51%. Beyond a reasonable doubt is a lot higher than that. Where it hits exactly, I can't tell you, but it sure as heck isn't more probable than not and it sure as heck isn't, do you think--do you think she probably drove while under the influence? Do you think she probably drove impaired? Well, yeah, I guess she probably did, that's not the standard.
>
> The standard is, are you convinced to a moral certainty that all of the elements of this offense, each and every element . . . including the impairment element, you look at each one separately, has been proven beyond a reasonable doubt to a moral certainty. . . .
>
> The standard is reasonable doubt. If you were--the way I like to phrase it is if you were making a decision about an important thing in your life . . . the time and the thought you would put into that . . . . It's the thought and the time that you give to . . . the most important decisions in your life.
>
> . . . [D]on't be misled into believing that you just have to find enough evidence to convict. Because that's not the standard and it just has to be more

likely than not that she was impaired because that is an absolute mischaracterization of the law [of] the State of Idaho.

Acknowledging the possibility of confusion regarding her previous statement, the prosecutor stated in rebuttal:

> Ladies and gentlemen, we heard the defense counsel refer to Deputy Summers as Deputy Smelser, I think some of you may have . . . thought that was entertaining.
> As you can see when we're up here, we do, sometimes, get our information[] mixed up. That's why you don't listen--or take what we say as evidence and testimony on the standard, that is a prime reason. And I'm also making this statement because I didn't say probable cause, or more probable than not, I used the word more reasonable than not and I can see where that may raise some confusion.
> Defense counsel is definitely correct in his reiteration of reasonable doubt and what that is. What I was intending to say is that what is the opposite of reasonable doubt? You have a reasonable belief. Your reasonable belief has to go beyond that doubt. So that . . . is what we're asking you to do today . . . all the jury instructions that the court has given you, if that helps you, then that's the standard. But the opposite of reasonable doubt is reasonable belief.

In addressing this issue, the district court stated that while there was no doubt the prosecutor had mischaracterized the State's burden of proof, it was harmless error because the misstatement had not occurred in rebuttal, and therefore, defense counsel had the opportunity to (and did) correct her in his closing argument. Further, the prosecutor herself clarified her remarks in rebuttal and the magistrate provided the jury with the correct reasonable doubt instruction and instructed them that they must accept and follow the rules as stated by the magistrate. In addition, the district court noted the jury had been previously instructed by the magistrate that it "must follow my instructions regardless of your own opinion of what the law is or what the law should be or what either side may state the law to be." In light of the facts the error was corrected and the substantial and competent evidence upon which a jury could have found Smelser guilty beyond a reasonable doubt, the district court concluded the outcome of the trial would not have been different absent this error.

In coming to this conclusion, the district court distinguished several cases in which this Court found a prosecutorial misstatement of the burden of proof was not harmless and amounted to fundamental error. Most relevantly, the court noted that in *State v. Erickson,* 148 Idaho 679, 686, 227 P.3d 933, 940 (Ct. App. 2010) the prosecution's mischaracterization of the burden of

proof occurred during rebuttal, which was critical because the defense had no opportunity to correct the misstatement. The district court contrasted the instant case where defense counsel had the opportunity to correct the prosecutor's misstatement. Further, the district court noted our conclusion in *Erickson*, that harmless error did not apply, was based on the cumulative effect of multiple errors in addition to the State's mischaracterization of the burden of proof--a consideration not present here. *Id. See also State v. Lovelass*, 133 Idaho 160, 168, 983 P.2d 233, 241 (Ct. App. 1999) (holding that although the prosecutor's statements were not completely correct, they were not so inflammatory to have abrogated the beyond the reasonable doubt standard, and the jury had been properly instructed as to the proper standard and had been instructed that arguments advanced by counsel did not constitute evidence).

We agree with the district court that Smelser has failed to show the error was not harmless. While the prosecutor certainly misstated the burden of proof, where the error was immediately and repeatedly corrected by both parties (and vigorously and extensively in the case of defense counsel) and the jury was given the correct burden of proof instruction and admonished that it was to follow that instruction regardless of any statements of the law by the parties, we conclude the outcome would not have been different absent the error, a conclusion bolstered by the significant evidence presented at trial as to Smelser's guilt which we discuss above. Accordingly, we affirm the district court's conclusion that any prosecutorial misconduct was harmless and, thus, not reversible fundamental error.

### III.

### CONCLUSION

We do not address the merits of Smelser's contention that the district court erred in refusing to review the magistrate's denial of her motion to dismiss because she does not provide either argument or authority addressing the actual basis of the magistrate's and district court's decisions on this issue, nor does she provide authority for her argument on the merits. Further the district court did not err in concluding there was sufficient evidence for a reasonable jury to find Smelser guilty of driving under the influence given the circumstantial evidence of her impairment presented at trial. Finally, the district court did not err in finding the prosecutor's misstatement of the State's burden of proof was harmless error and, thus, did not constitute fundamental error where the mistake was immediately corrected by both parties and the jury was instructed properly by the magistrate. Accordingly, we affirm the order of the district court, on

10

intermediate appeal from the magistrate division, affirming Smelser's judgment of conviction for driving under the influence.

Chief Judge GRATTON and Judge MELANSON **CONCUR.**