**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 35523**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **2010 Opinion No. 84** |
| Plaintiff-Respondent, | ) |
| | ) **Filed: December 13, 2010** |
| v. | ) |
| | ) **Stephen W. Kenyon, Clerk** |
| KENNETH FRANKLIN FELDER, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Ronald J. Wilper, District Judge.

Judgment of conviction and sentences for three counts of lewd conduct with a minor under sixteen, <u>affirmed</u>.

Molly J. Huskey, State Appellate Public Defender; Heather M. Carlson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

Kenneth Franklin Felder appeals from the judgment of conviction and sentences entered upon a jury verdict finding him guilty of three counts of lewd conduct with a minor under sixteen. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

Felder was indicted by a grand jury on three counts of lewd conduct with a minor under sixteen, Idaho Code § 18-1508, for acts he committed against his stepdaughter, A.K. The abuse began when A.K. was in third grade and continued until she was in fifth grade when she disclosed the abuse to a school counselor who, in turn, notified the police. When questioned by law enforcement, Felder admitted to having committed some acts against A.K. five to ten times over the course of a year and a half. Two months later, after A.K.'s mother filed for divorce,

1

Felder claimed for the first time that A.K. had fabricated the allegations. He continued to deny the allegations at trial, testifying that he believed A.K. had fabricated the allegations because she did not like him and because he was a strict disciplinarian, and asserting that he had only confessed to the police because they had threatened to take his children away.

The jury found Felder guilty of all three counts of lewd conduct with a minor. The district court entered a judgment of conviction and imposed concurrent sentences of twenty-five years, with ten years determinate. Felder filed a timely Rule 35 motion for reduction of sentence, which the court denied. Felder now appeals the judgment of conviction, asserting several instances of prosecutorial misconduct and contending that the sentence imposed is excessive.

## II.

## ANALYSIS

### A.    Prosecutorial Misconduct

Felder contends that the prosecutor violated his right to a fair trial by impermissibly vouching for the victim, misrepresenting the facts in evidence, shifting the burden of proof, and appealing to the passions and prejudices of the jury in closing argument. He concedes that the comments were not objected to below, but argues that they amount to fundamental error such that we may address the issue for the first time on appeal.

Recently in *State v. Perry*, ___ Idaho ___, ___ P.3d ___ (Dec. 7, 2010), the Idaho Supreme Court articulated the standard of review on a claim of fundamental error where a defendant asserts that an error occurred at trial--which it explicitly stated included allegations of prosecutorial misconduct. The court summarized the standards applicable both when there was a contemporaneous objection and when there was not, the latter of which is applicable here:

> (2) If the alleged error was not followed by a contemporaneous objection, it shall only be reviewed by an appellate court under Idaho's fundamental error doctrine. Such review includes a three-prong inquiry wherein the defendant bears the burden of persuading the appellate court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) plainly exists (without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision); and (3) was not harmless. If the defendant persuades the appellate court that the complained of error satisfies this three-prong inquiry, then the appellate court shall vacate and remand.

*Id*. at ___, ___ P.3d at ___. Employing this standard, we examine each of Felder's allegations of prosecutorial misconduct.

### 1. Vouching for credibility

Felder's first assertion of prosecutorial misconduct is that the prosecutor improperly vouched for the credibility of the victim. Initially, he points to the following statement in the prosecutor's closing argument:

> For you to believe that [A.K.] would somehow be able to make up these allegations that somehow in doing so, that the state would be able to wrap itself around the allegations and just happen to find all of these coincidences would make you think that [A.K.] is so sophisticated and so smart that she could fool people who do this every day . . . .

The prosecutor followed the statement with an explanation of how A.K.'s disclosures corresponded to when Felder began having sole care of her and when she later became "disconnected" at school. Felder contends that by arguing that A.K. would have had to "fool people who do this every day," including implicitly the prosecutor's office, in attempting to explain why she was believable, the prosecutor was "implicitly saying that the State believes her and the State would not be able to find all the coincidences if she was not believable." He contends that by placing herself in the arguments and implying that the victim could not fool the state, the prosecutor was vouching for the credibility of A.K.

Felder points to other statements he contends are similar, wherein the prosecutor explained to the jury that if A.K. had made inconsistent statements, that fact would have been brought to the jury's attention. Specifically, the prosecutor stated:

> She tells her friend. Her friend encourages her to tell [a teacher]. She goes to CARES. She tells CARES what happened. And ladies and gentlemen, what is important about all of this is that each of these persons has come to testify, not her little friend . . ., but all these other people have come. And if she had said anything inconsistent, [A.K.] had been inconsistent with [the teacher], with CARES, with what the police understood, you would have heard about it.
> You would have heard about it in cross examination. You would have heard how he brings out inconsistencies in [A.K.'s] stories, just as the state did with the defendant and how inconsistent he has been throughout his entire testimony today with what he told Detective Zakarian seven and a half months ago. You see, you would have known if [A.K.] had been inconsistent about any of it, but you never heard about it at all.

Felder contends that this statement "vouches for the victim, implying that the prosecutor knows A.K. has never been inconsistent."

Closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. *State v. Gross*, 146 Idaho 15, 18, 189 P.3d 477, 480 (Ct. App. 2008); *State v. Timmons*, 145 Idaho 279, 288, 178 P.3d 644, 653 (Ct. App. 2007). Its purpose is to enlighten the jury and to help jurors remember and interpret the evidence. *Id.* Both sides have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom. *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003); *Gross*, 146 Idaho at 18, 189 P.3d at 480. However, closing argument should not include the prosecutor's personal opinions and beliefs about the credibility of a witness. *Gross*, 146 Idaho at 18, 189 P.3d at 480; *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007). This includes the right to express how, from that party's perspective, the evidence confirms or calls into doubt the credibility of particular witnesses. *Id*.

In *State v. Priest*, 128 Idaho 6, 909 P.2d 624 (Ct. App. 1995), this Court addressed an issue similar to that presented here. There, in reference to the credibility of the state's witnesses, the prosecutor argued, among other things:

> And I guess the question that may be asked is, why should you believe these witnesses? But for a second I'd like to just turn it around a little bit. Why should you not believe these witnesses? *Have any of them in this courtroom on cross-examination been shown to be lying about what they told you?* Have any of them been impeached? The answer is no . . . .
> What does Joe Taylor gain by lying? Does he get his tools back? Does he get money? Does he get charges dropped? Does he get revenge? What does he have to gain by making up that statement that he told you? We took a man up to the woods. We shot him. It was beautiful. What does he gain? Didn't gain anything. So, again I submit Joe Taylor was not making up anything. *Joe Taylor was not lying*.
> If they're going to lie, why didn't they lie better? Why didn't they get their stories perfectly straight? Why didn't they get their dates right? Why didn't they get the exact words perfectly right? Because that's human nature. People don't remember things exactly the way they happen all the time. But they do remember the general tenor of what goes on. So if these people came in and said "we don't remember the date," I would submit to you that is the--has the ring of truth. That has the ring of truth. *There is simply no reason to believe any of these people lied.*

4

*Priest*, 128 Idaho at 14, 909 P.2d at 632 (emphasis in original). This Court concluded that the statements were not misconduct because it was apparent from the context in which the challenged statements were made that the prosecutor was merely analyzing the evidence bearing upon the witnesses' credibility and stating the conclusions which he urged the jury to draw therefrom. *Id.* Contrary to Priest's argument, we concluded that the prosecutor's comments did not imply that he was privy to information corroborating the witnesses' testimony that was unknown to the jury, or that he was personally vouching for the credibility of his witnesses. *Id.*

In regard to the first statement, this is the case here. Examining the challenged statement in context, it is clear that the prosecutor is not stating that it is her personal belief that A.K. was credible, but that the jury should find A.K. credible based on the evidence presented at trial. Immediately following the challenged statement, the prosecutor referenced the fact that A.K.'s disclosure that Felder began abusing her at night when she was in third grade was bolstered by testimony that this was precisely the time when Felder became her sole caregiver at night and that when she was in the fourth grade she was placed in a counseling group and was "disconnected and having social problems." The prosecutor then surmised that these circumstances corroborated A.K.'s testimony and argued the reasonable inference stemming from that conclusion--that A.K. could not have been so sophisticated as to fabricate the allegations of sexual abuse in such a way as to coincide with other events occurring at the time. Because the prosecutor based her argument regarding A.K.'s credibility on the evidence presented at trial, it was not misconduct.

The same can be said about the second statement. The prosecutor at no time suggested a personal opinion about the believability of A.K.'s allegations. Rather, the prosecutor brought to the jury's attention the evidence presented at trial to argue why the jury should consider the victim's testimony credible. Therefore, because neither statement constituted vouching for A.K.'s credibility, the statements cannot be considered misconduct.

### 2. Facts not in evidence

Felder also contends that the second statement constituted misconduct because by arguing that the jury would have heard about any inconsistencies in A.K.'s story if they existed, the prosecutor misrepresented the facts in evidence. It is plainly improper for a party to present closing argument that misrepresents or mischaracterizes the evidence. *State v. Troutman*, 148 Idaho 904, 911, 231 P.3d 549, 556 (Ct. App. 2010); *State v. Beebe*, 145 Idaho 570, 575, 181 P.3d

496, 501 (Ct. App. 2007). In addition, it constitutes misconduct for a prosecutor to place before the jury facts not in evidence. *State v. Gerardo*, 147 Idaho 22, 26, 205 P.3d 671, 675 (Ct. App. 2009); *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007).

In support of this argument, Felder relies on *Washington v. Hofbauer*, 228 F.3d 689 (6th Cir. 2000), a child sex abuse case in which the prosecutor argued to the jury that it had heard from the victim's mother, a doctor, a social worker, and the victim herself "and nowhere for the most part based upon what happened, has [the child's version of the events] changed." The court concluded that the prosecutor misrepresented the facts in evidence, because none of the individuals identified by the prosecutor, nor any other trial witness, had actually testified to the substance of their conversations with the victim and therefore, no evidence had been presented to the jury regarding whether the victim's story had changed. *Id.* at 700.

*Hofbauer* is easily distinguished from the present case. There is a significant distinction between a prosecutor's affirmative assertion that witnesses' testimony showed the child victim's statements to have been consistent over time, as occurred in *Hofbauer*, and the prosecutor's statement here noting the absence of any evidence that the victim's statements had changed over time. In other words, the prosecutor in *Hofbauer* affirmatively misrepresented the witnesses' testimony where as here, the prosecutor made no misrepresentation but accurately stated that witnesses had not presented testimony showing that the child's description of events were inconsistent with the trial testimony.

The prosecutor's statement here is similar to that found permissible in *Priest*, 128 Idaho at 14, 909 P.2d at 632. There, the prosecutor said, "Why should you not believe these witnesses? Have any of them in this courtroom on cross-examination been shown to be lying about what they told you? Have any of them been impeached? The answer is no, they haven't been . . . ." Admittedly, the question in *Priest* was whether this amounted to the prosecutor vouching for the witnesses, not whether the prosecutor was implying facts not in evidence. Nevertheless, the court's conclusion in *Priest*, that "the prosecutor was merely analyzing the evidence bearing upon witnesses' credibility and stating the conclusions which he urged the jury to draw therefrom," is equally applicable to the prosecutor's statement Felder is challenging. Because the prosecutor did not misrepresent the facts in evidence during closing arguments, no misconduct can be attributed on this basis.

6

### 3. Burden of proof

Felder also contends that the prosecutor improperly shifted the burden of proof to the defense by arguing that if A.K.'s disclosures had been inconsistent the jury would have heard about it and thus, implying that it was the defense's burden to show that A.K.'s statements were inconsistent. Misconduct may occur by the prosecutor diminishing or distorting the state's burden to prove the defendant's guilt beyond a reasonable doubt. *State v. Raudebaugh*, 124 Idaho 758, 769, 864 P.2d 596, 607 (1993); *State v. Erickson*, 148 Idaho 679, 685, 227 P.3d 933, 939 (Ct. App. 2010); *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007). The requirement that the State prove every element of a crime beyond a reasonable doubt is grounded in the constitutional guarantee of due process. *Jackson v. Virginia*, 443 U.S. 307, 313-14 (1979); *State v. Mubita*, 145 Idaho 925, 942, 188 P.3d 867, 884 (2008); *Erickson*, 148 Idaho at 685, 227 P.3d at 939. This standard of proof plays a vital role in the American scheme of criminal procedure because it provides concrete substance for the presumption of innocence--that bedrock axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law. *In re Winship*, 397 U.S. 358, 363 (1970); *Erickson*, 148 Idaho at 685, 227 P.3d at 939.

As we stated above, the prosecutor has the right to identify how, from the prosecutor's perspective, the evidence confirms or calls into doubt the credibility of a particular witness. *State v. Lovelass*, 133 Idaho 160, 168, 983 P.2d 233, 241 (Ct. App. 1999); *Priest*, 128 Idaho at 14, 909 P.2d at 632. Here, the prosecutor properly limited its arguments to whether the evidence presented any inconsistencies in A.K.'s story. *See Priest*, 128 Idaho at 14, 909 P.2d at 632 (not finding misconduct where the prosecutor argued that the witnesses should be believed because none had been shown on cross-examination to be lying). Thus, we conclude that the prosecutor's statement in this instance did not improperly shift the burden of proof.

### 4. Appeal to emotions, passions, or prejudices

Felder also contends that in closing arguments the prosecutor improperly appealed to the emotions, passions, or prejudices of the jury. Specifically, Felder points to the prosecutor's statement at the conclusion of her closing argument, when asking the jury to convict Felder, that "in this instance, [A.K.] should be seen and heard and believed by you. Convict him for what he has done to her." He contends that these statements appealed to the emotions of the jury and "a sense of community justice" by asking the jury to convict him to show A.K. that they believe her

and for the alleged harm that Felder caused her, rather than to convict him based on the evidence presented at trial.

As we noted above, a prosecutor has considerable latitude in closing argument and has the right to discuss inferences arising from the evidence. *State v. Porter*, 130 Idaho 772, 786, 948 P.2d 127, 141 (1997); *Phillips*, 144 Idaho at 86, 156 P.3d at 587. This latitude is not boundless, however, and it is impermissible to appeal to the emotion, passion, or prejudice of the jury through the use of inflammatory tactics, *State v. Gross*, 146 Idaho 15, 20-21, 189 P.3d 477, 482-83 (Ct. App. 2008); *Phillips*, 144 Idaho at 86, 156 P.3d at 587. Urging the jury to render a verdict based on factors other than the evidence and jury instructions, such as sympathy for the victim, has no place in closing arguments. *Beebe*, 145 Idaho at 576, 181 P.3d at 502.

Examining the statement in context, we conclude that the statement was not improper as it was not an invitation for the jury to convict Felder on any basis besides the evidence presented at trial. Before making the statement at issue, the prosecutor had discussed the jury instructions, the evidence presented at trial which the prosecutor contended established the elements of the charged crimes, and the evidence which the prosecutor characterized as reflecting favorably on A.K.'s credibility and negatively on Felder's credibility. Thus, we agree with the state's assertion that given this context, it is clear that the prosecutor's request that the jury deem A.K. credible and that it convict Felder was based on the evidence at trial. *See State v. Adams*, 147 Idaho 857, 863-64, 216 P.3d 146, 152-53 (Ct. App. 2009) (concluding that the prosecutor's request for justice for the victims was not an inflammatory appeal to convict on anything other than the evidence because, in part, the remarks were made immediately after a description of how the trial evidence proved the defendant's guilt). The statements therefore did not impermissibly appeal to the emotions, passions, or prejudices of the jury.

## B.    Sentence Review

In the alternative, Felder contends that, given any view of the facts, his concurrent sentences of twenty-five years with ten years determinate upon his conviction for three counts of lewd conduct with a minor are unduly harsh and excessive. An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be

8

unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

Admitting that the sentence is within the statutory maximum, Felder argues that nonetheless, his sentence was an abuse of discretion because the district court failed to properly consider the mitigating factors present in his case. Specifically, he asserts that the court failed to give proper consideration to the fact that this was his first felony conviction, his positive employment history, and the support of his family and friends.

In determining the appropriate sentence, the district court specifically stated that it considered the objectives of sentencing, the material contained in the presentence investigation report (PSI) and the psychosexual evaluation, as well as the harm to the victim caused by Felder's actions. The court then stated:

> . . . keeping in mind that protection of society is the number one concern of any sentencing judge, I think that an appropriate sentence in this case is a 25-year sentence on each count concurrent with 10 years fixed. . . .
>
> . . . .
>
> And I think that the prison sentence is appropriate because of the nature of the crime, the fact that it was a repeated offense and because it was a very young innocent victim, I think the fact that you offer what you believe is a plausible denial of your explanation, you have essentially said that your victim in this case was lying because she didn't like you because you were such a tough disciplinarian.
>
> And I understand your inability to stand up and admit that you engaged in this conduct. But nevertheless, the jury did find you guilty beyond a reasonable doubt of all three counts, and I think that their verdict was well supported by the evidence that was presented.
>
> I have taken into account the fact that you're not a career criminal, the fact that you have been a productive member of society, and I wanted to give you some hope, some light at the end of the tunnel. . . .

9

It is thus evident from the record that the court did take into account that this was Felder's first felony conviction, as well as the fact that he had been a "productive" member of society which common sense dictates included his employment history. The court also indicated it had taken into account the information contained in the PSI, which included the letters of support written by friends and family. Also, to the extent that Felder argues that the court did not give proper weight to these factors by imposing a lesser sentence, he has not shown that the court abused its discretion. As pointed out by the state, while the mitigating factors identified by Felder may have some relevancy to sentencing, a court is not required to assess or balance all of the sentencing goals in an equal manner. *See State v. Dushkin*, 124 Idaho 184, 186, 857 P.2d 663, 665 (Ct. App. 1993). Along with any mitigating circumstances, the court also considered the surrounding circumstances of the crime--including the fact that Felder repeatedly abused the young and innocent victim who suffered harm as a result--and then accused her of lying because she disliked him. The court also found that Felder continued to be a threat to public safety due to his continued refusal to admit to the abuse and placed great weight on this factor, concluding that the sentence imposed was necessary to protect the community from the possibility that Felder may reoffend. That the court did not elevate the mitigating factors Felder cites over the need to protect society does not establish an abuse of discretion, and we conclude that taking into account the entirety of the record, the sentence imposed was reasonable.

### III.

### CONCLUSION

The prosecutor did not commit misconduct by improperly vouching for the credibility of A.K., referring to facts not in evidence, shifting the burden of proof, or by improperly appealing to the passions and prejudices of the jury. We also conclude that the sentence imposed by the district court was reasonable in light of the factors applicable to the determination. Accordingly, Felder's judgment of conviction and sentences for three counts of lewd conduct with a minor under sixteen are affirmed.

Chief Judge LANSING and Judge GRATTON, CONCUR.

10