# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 39933

STATE OF IDAHO,            )
                              )      **2014 Opinion No. 9**

      **Plaintiff-Respondent,**     )

                              )      **Filed: February 10, 2014**

v.                        )

                              )      **Stephen W. Kenyon, Clerk**

BRANDON TYLER EDDINS,    )

                              )

      **Defendant-Appellant.**      )

                              )

Appeal from the District Court of the Second Judicial District, State of Idaho, Nez Perce County.  Hon. Carl B. Kerrick, District Judge.

Judgment of conviction for aggravated assault and order awarding restitution, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.  Brian R. Dickson argued.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.  Lori A. Fleming argued.

---

LANSING, Judge

Brandon Tyler Eddins appeals from his judgment of conviction for aggravated assault and an order awarding restitution.  He argues that the conviction was tainted by fundamental error because the State committed prosecutorial misconduct by falsely implying that the victim had been completely blinded.  He also argues that the jury's verdict, finding him not guilty of aggravated battery but guilty of aggravated assault, precludes any award of restitution.

## I.

## BACKGROUND

The nature of the altercation between Eddins and his victim, Daniel Hight, was disputed at trial.  Both Eddins and Hight testified and agreed that the two confronted each other on a street, adjacent to a mutual acquaintance's home, and that Hight was burned with acid.  Hight testified that he, his girlfriend, and her children were traveling to a relative's home.  As they

approached the home, they observed Eddins but attempted to avoid him because he had been harassing them. Before they could leave, Eddins saw the car and chased after it. Hight, who testified he was not sure why Eddins was harassing him, stopped the car and got out of it to confront Eddins. Eddins charged at him, saying something unintelligible,[1] and then hit him in the face with the bottle of acid. Hight's recollection after the acid hit him was limited. He testified that he felt a cold burn, that he had difficulty breathing because of the acid fumes, and that he could not see at all.

After being covered in the acid, Hight first attempted to rinse the acid off his skin and flush his eyes at the relative's home. Because he needed additional medical treatment, he was then taken to a hospital. Over a period of weeks, medical staff attempted to save his eye, but eventually removed it because Hight could not use it to see and because it created a significant risk of infection.

Eddins testified to a different course of events. He said that he and Hight had been friends but that he was upset because Hight had borrowed his property and not returned it. He stated that he saw Hight's car that evening and followed it because he lived nearby and was concerned Hight would steal his property. He testified that Hight stopped, got out of his car and then got "right up in [his] face." Eddins responded by saying, "Back off, man, I have acid." Hight did not respect this warning and escalated the confrontation by pushing Eddins. In so doing, Hight caused the plastic bottle containing the acid to leave Eddins' hand and splash over both of them. Eddins fled the scene, returned home, rinsed the acid off of his body, and flushed the acid from his eyes.

Eddins was charged with aggravated battery, Idaho Code §§ 18-903(b), 18-907(c), 18-908; and the State sought a persistent violator sentence enhancement, I.C. § 19-2514. The State alleged that Eddins actually, intentionally, and unlawfully struck Daniel Hight with a plastic container containing corrosive acid.

At trial, the jury was instructed that if it found Eddins not guilty of aggravated battery, it must consider the lesser-included offense of aggravated assault. Aggravated assault was defined in the instructions as "unlawfully attempt[ing], with apparent ability, to commit a violent injury

---

[1]    Hight testified that Eddins did say something, but did not say, "Back off, man, I have acid."

2

on the person of another" or "intentionally and unlawfully threaten[ing] by word or act to do violence to the person of another, with an apparent ability to do so, and do[ing] some act which creates a well-founded fear in the other person that such violence is imminent." The jury was also instructed that it could not proceed to consider the aggravated assault charge unless it first acquitted Eddins of the aggravated battery charge.

The jury returned a verdict finding Eddins guilty of aggravated assault. Thereafter, the trial court entered its judgment of conviction sentencing Eddins to a unified sentence of fifteen years in prison, with six years fixed. It also ordered Eddins to pay $5,241.79 in restitution to cover Hight's medical expenses. Eddins appeals the judgment of conviction and the order awarding restitution.

## II.

## ANALYSIS

Eddins argues that his conviction is tainted by fundamental error because the prosecutor committed misconduct by falsely implying that Hight was totally blinded. He also argues that he cannot be held liable for restitution damages because he was found guilty of aggravated assault, a noncontact crime, and acquitted of aggravated battery, a contact crime.

### A. Eddins Failed to Show that the Prosecutor's Statements Constitute Fundamental Error

The State implied on at least seven occasions that Hight had been completely blinded. In each instance, the State described Hight's injury as a loss of "his sense of sight" using that phrase or words of similar import. The words do not appear to have been chosen carelessly or by accident because these words framed counsel's opening and closing remarks and because they represented the theme of counsel's argument. For example, the State began its opening remarks in the following manner:

> Ladies and gentlemen of the jury, out of our senses, out of our five senses, sight might be the most important one. We use our sense of sight every second of the day.
> And today, over the course of this trial, you are going to hear how the defendant, Brandon Eddins, caused the victim in this case, Daniel Hight, *to lose his sense of sight*. You will hear testimony and see physical evidence showing you that the defendant threw a liquid in Daniel Hight's face causing it to burn his left eye, causing him *to lose sight*.

(emphasis added). In the opening remarks, the State continued and stated, "he has lost his eye, and he has *lost his sight*." Then, the State concluded its opening remarks by stating:

3

After hearing all of this testimony today, you will be able to have enough to find the defendant guilty of aggravated battery for this attack on Daniel Hight which caused him to *lose his eye and his sight*.

(emphasis added).

This language was not only used throughout the State's opening, it also framed the State's closing remarks:

Ladies and gentlemen of the jury, when I spoke with you yesterday morning, I told you that at the end of this trial, you would have the information in front of you on how Daniel Hight *lost one of his most importance senses, his sense of sight*, how he lost his left eye and *he lost his sense of sight*.
. . . .
The acid used on Daniel Hight's eye on July 11th changed his life. *He has lost his sight*, and he has lost his eye.

(emphasis added).

The record shows that Hight was not blinded in both eyes. While Hight testified that his vision was permanently impaired, it is clear from the record that he could still see with his other eye. Hight testified that his "depth perception is way off" and his range of vision is limited on his left side, which causes him to "run into stuff a little bit on that side." Moreover, the jury was indirectly made aware that Hight could see. At trial, the State asked Hight several questions about Exhibit 5, a photograph, and Hight identified the contents of that photograph.

On appeal, Eddins argues that the prosecutor committed misconduct when it erroneously described Hight's injury as a loss of his sense of sight. Eddins argues that the prosecutor's comments amounted to misconduct under two distinct rationales. First, he argues that the State mischaracterized the evidence. Second, he argues that the statement was impermissibly intended to prejudice the jury.

Eddins concedes that he made no contemporaneous objection to the prosecutor's repeated statements that Hight had lost his sense of sight at trial. Under Idaho law, if alleged prosecutorial misconduct was not followed by a contemporaneous objection, an appellate court will reverse only if the misconduct rose to the level of fundamental error. *State v. Perry*, 150 Idaho 209, 227, 245 P.3d 961, 979 (2010). To show fundamental error, an appellant must demonstrate that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional

4

information not contained in the appellate record; and (3) affected the outcome of the trial proceedings. *Id.* at 226, 245 P.3d at 978.

While our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, he or she is nevertheless expected and required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). "Prosecutorial misconduct may so infect the trial with unfairness as to make the resulting conviction a denial of due process. To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial." *State v. Sanchez*, 142 Idaho 309, 318, 127 P.3d 212, 221 (Ct. App. 2005) (internal citations omitted); *see also Greer v. Miller*, 483 U.S. 756, 765 (1987).

It is plainly improper for a prosecutor to present closing argument that misrepresents or mischaracterizes the evidence. *State v. Felder*, 150 Idaho 269, 273-74, 245 P.3d 1021, 1025-26 (Ct. App. 2010); *see also State v. Troutman*, 148 Idaho 904, 911, 231 P.3d 549, 556 (Ct. App. 2010); *State v. Beebe*, 145 Idaho 570, 575, 181 P.3d 496, 501 (Ct. App. 2007). "In addition, it constitutes misconduct for a prosecutor to place before the jury facts not in evidence." *Felder*, 150 Idaho at 274, 245 P.3d at 1026; *see also State v. Gerardo*, 147 Idaho 22, 26, 205 P.3d 671, 675 (Ct. App. 2009); *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007). Moreover, "appeals to emotion, passion or prejudice of the jury through use of inflammatory tactics are impermissible." *State v. Ellington*, 151 Idaho 53, 62, 253 P.3d 727, 736 (2011) (quoting *Phillips*, 144 Idaho at 87, 156 P.3d at 588). However, in reviewing allegations of prosecutorial misconduct, we must keep in mind the realities of trial. *Ellington*, 151 Idaho at 62, 253 P.3d at 736. A fair trial is not necessarily a perfect trial. *Id.*

On appeal, the State first argues that the prosecutor's statements were "entirely accurate, at least as to the eye [Hight] lost." We disagree. The statement was not "entirely accurate"; it was at best inartful or needlessly imprecise, and at worst misleading. Because Hight can still see in one eye, he has not lost his sense of sight. A sense is defined as "a mechanism or faculty of perception [such as] the faculty of receiving mental impressions through the action of sense organs of the body." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2067 (1993). Here, Hight's sense of sight is his faculty of visual perception. While Hight's faculty of visual perception has been impaired, it has not been lost. Further, the context of the statements tends to render them more misleading, not less misleading. The description, "he lost his sense of sight,"

was made in the context of the five human senses and a description of the importance of sight. By describing the sense of sight by reference to other senses, the prosecutor implied that he was discussing Hight's overall faculty of perception, not the ability to perceive visual information with a single eye.

The State also argues that the use of the phrase "he lost his sense of sight" was clarified by the description "and he lost his eye." As is the case here, one can lose an eye and not become completely blind. Saying that Hight "lost his eye" would have been sufficient to explain that he had lost the ability to see in that eye. Instead, the prosecutor said Hight has lost his eye *and* lost his sense of sight. The conjunction implies that Hight has suffered two injuries and that those injuries are distinguishable. It implies that, in addition to losing an eye, Hight was also completely blinded. Therefore, we conclude that the prosecutor mischaracterized the evidence.

While we reject the State's argument that the statements were proper, we also conclude that Eddins has failed to show that any misconduct affected the outcome of the trial. Given the record, no reasonable juror would believe that Hight had been completely blinded.

First, the trial court instructed the jury that neither opening nor closing statements by counsel constituted evidence and that "if the facts as you remember them differ from the way the lawyers have stated them, follow your memory." The court also defined the scope of the evidence the jury was to consider, which did not include the arguments of counsel. Thereafter, the jury was instructed, "Neither sympathy nor prejudice should influence you in your deliberations." Accordingly, the jury was properly instructed to render its decision based upon the evidence adduced and to disregard counsel's recollection of the facts when that recollection was contradicted by the evidence. These instructions limited the impact of any erroneous statements of fact by the prosecutor. *See State v. Severson*, 147 Idaho 694, 721, 215 P.3d 414, 441 (2009).

More importantly, Hight's testimony that his depth perception and range of vision were impaired showed that his injury was to one eye and that he was not rendered completely blind. Moreover, during his testimony, Hight reviewed photographs and described their contents plainly demonstrating that he had not completely lost his sight. Accordingly, no juror could have reasonably believed that Hight was completely blind. Because no reasonable juror would have concluded that Hight was completely blind, Eddins has not shown that the potentially misleading nature of the statements affected the outcome of the trial. For similar reasons, we conclude that

6

the jury's verdict was not the result of an appeal to emotions or passions. Because no reasonable juror could have been misled to believe that Hight had been blinded, the juror's potential sympathy toward blind people or against defendants who cause blindness would not be implicated. Therefore, Eddins has failed to show fundamental error.

**B.      The Trial Court Did Not Err by Ordering Eddins to Pay Restitution**

Eddins argues that because the jury acquitted him of aggravated battery and found him guilty only of the lesser offense of aggravated assault, the trial court erred by granting a restitution award. He argues that the assault, which involved only a threat, cannot be the proximate cause of an injury because threats do not cause physical injuries.

Idaho Code § 19-5304(2) authorizes the sentencing court to order a defendant to pay restitution for "economic loss to the victim." The sentencing court has discretion to determine whether restitution is proper and, if it is proper, the amount of restitution. *State v. Hill*, 154 Idaho 206, 211, 296 P.3d 412, 417 (Ct. App. 2012); *State v. Higley*, 151 Idaho 76, 78, 253 P.3d 750, 752 (Ct. App. 2010); *State v. Card*, 146 Idaho 111, 114, 190 P.3d 930, 933 (Ct. App. 2008). On appeal, the factual findings of the sentencing court will not be disturbed if they are supported by substantial evidence. *State v. Straub*, 153 Idaho 882, 885, 292 P.3d 273, 276 (2013); *Hill*, 154 Idaho at 211, 296 P.3d at 417. Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Straub*, 153 Idaho at 885, 292 P.3d at 276; *Kinney v. Tupperware Co.*, 117 Idaho 765, 769, 792 P.2d 330, 334 (1990).

In order for a crime victim to be awarded restitution, the State must show a causal connection between the criminal conduct resulting in a conviction and the damages the victim suffered. I.C. § 19-5304(7); *State v. Corbus*, 150 Idaho 599, 602, 249 P.3d 398, 401 (2011); *Hill*, 154 Idaho at 212, 296 P.3d at 418. This rule originates in the restitution statute itself. The term "victim" is defined to include a person "who suffers economic loss or injury as the result of the defendant's criminal conduct." I.C. § 19-5304(1)(e)(i). The necessary causal nexus requires that the criminal conduct be both the actual cause and proximate cause of the victim's injury. *Corbus*, 150 Idaho at 602, 249 P.3d at 401; *State v. Nienburg*, 153 Idaho 491, 495, 283 P.3d 808, 812 (Ct. App. 2012). Actual cause refers to whether "a particular event produced a particular consequence," and the court applies the "but for" test. *State v. Lampien*, 148 Idaho 367, 374, 223 P.3d 750, 757 (2009). Proximate cause focuses on the foreseeability of the injury, and the court must determine whether the injury was "so highly unusual that we can say, as a matter of

7

law that a reasonable [person], making an inventory of the possibilities of harm which his conduct might produce, would not have reasonably expected the injury to occur." *Id*. (quoting *Cramer v. Slater*, 146 Idaho 868, 875, 204 P.3d 508, 515 (2009)). The requisite causal connection must be shown by a preponderance of the evidence. I.C. § 19-5304(6); *Hill*, 154 Idaho at 212, 296 P.3d at 418; *In re Doe*, 146 Idaho 277, 284, 192 P.3d 1101, 1108 (Ct. App. 2008).

The parties appear to agree that the jury's verdict acquitted Eddins of the aggravated battery charge and amounted to a determination that Eddins committed aggravated assault by means of an "unlawful threat," not an "unlawful attempt," to commit a violent injury. *See* I.C. § 18-901 (defining assault). The aggravated battery charge alleged in this case and the "unlawful attempt" version of the aggravated assault charge differ only slightly. Generally, a person is guilty of the attempt, but not the battery, when a person fails to complete the battery. From the record below, it does not appear that the jury could have found that Eddins attempted, but failed, to batter Hight because the acid spilled on Hight and he was injured. Accordingly, we conclude that the parties are correct; the jury appears to have found that Eddins committed an assault by threatening to do violence to Hight. The jury finding that Eddins threatened Hight with the acid but did not purposefully douse Hight in acid is largely consistent with Eddins' version of events. Also consistent with the jury's verdict and Eddins' testimony, the jury could have found that Hight responded to Eddins' threat by pushing Eddins, causing the bottle of acid to spill over both men.[2]

Eddins argues his case is analogous to *State v. Shafer*, 144 Idaho 370, 161 P.3d 689 (Ct. App. 2007). We there held that "Shafer's criminal act of leaving the scene and failing to provide information and assistance did not cause the injuries and property damage suffered by the other driver." *Id*. at 373, 161 P.3d at 692. In that case, the other driver's injury was the result of a vehicular accident. The accident and resulting injury, by necessity, occurred *before* Schafer committed the offense of leaving the scene of the accident. Accordingly, the victim's injuries would have occurred irrespective of Shafer's later criminal conduct. Because the injuries would

---

[2]     Because we base our analysis upon the jury's finding that Eddins only threatened Hight with acid, which implicitly rejected Hight's testimony that Eddins threw the acid onto Hight, the disparity between Eddins' and Hight's versions of events is not relevant to our proximate cause analysis.

have occurred without the defendant's subsequent culpable conduct, the criminal offense did not cause the injury. *Id*.; *see also Corbus*, 150 Idaho at 605, 249 P.3d at 404 (similarly distinguishing *Shafer*). Here, the record does not show that the injury would have occurred irrespective of the culpable conduct, and *Shafer* is inapposite.

This case is analogous to *Corbus*, where the Idaho Supreme Court discussed the required nexus between criminal conduct and an injury that is compensable by restitution. In *Corbus*, the defendant pled guilty to reckless driving and to eluding a police officer. He had driven at speeds exceeding 100 mph, at night, without his headlights activated, while being chased by police. His passenger waited until Corbus slowed his vehicle to 50 mph and then leapt from the vehicle. In so doing, the passenger was injured. Corbus argued that he should not be held liable for restitution damages because the injury was not foreseeable and because it was the result of an intervening cause. The Idaho Supreme Court disagreed; it concluded that Corbus created a dangerous situation, that it was foreseeable that his passenger would extricate himself from that situation, and that it was additionally foreseeable that the passenger would extricate himself at the time and in the manner he did so. The Court summarized its holding: "The passenger's act of jumping from the vehicle was a reasonable reaction to the dangerous situation, especially given the lack of alternatives available to the passenger." *Corbus*, 150 Idaho at 606, 249 P.3d at 405.

Another analogous case is *State v. Cottrell*, 152 Idaho 387, 390, 271 P.3d 1243, 1246 (Ct. App. 2012). In that case, Cottrell was charged with obstructing an officer because he refused to place his hands behind his back and attempted to pull his arm away from the officer during an arrest. Neither of these two physical actions directly caused any injury. Rather, the officer twisted his knee when he responded to Cottrell's criminal acts by attempting to gain control of Cottrell. We held that the officer's reaction and injury were foreseeable results of Cottrell's criminally culpable conduct. Although the officer was not injured directly by the conduct constituting the offense, the criminal conduct was nonetheless the cause of the injury.

Like recklessly driving at an unreasonable rate of speed or resisting arrest, threatening imminent violence creates a dangerous situation in which it is foreseeable that the threatened person will take steps to protect himself and those steps may result in injury. According to Eddins' own version of events, Hight pushed Eddins away after Eddins threatened him with the acid. This foreseeable response to Eddins' threat caused the injury to Hight. Hight's reaction

was a "reasonable reaction to the dangerous situation, especially given the lack of alternatives available." *See Corbus*, 150 Idaho at 606, 249 P.3d at 405. Therefore, the resulting injury was reasonably foreseeable and proximately caused by Eddins' conduct.

Eddins argues, however, that his acquittal of the battery charge precludes restitution for Hight's injuries. He argues that by acquitting him of battery, the jury necessarily found that he did not intentionally cause the acid to touch Hight, and therefore he cannot be responsible to pay for the injury caused by the acid. That is, he urges that because he was found to be not *criminally* responsible for Hight's injuries, he cannot be responsible to pay restitution for them. We disagree. Eddins' conclusion does not follow from his premise because a physical touching or physical injury need not be an element of the crime of conviction in order for restitution liability to attach. Rather, as stated above, restitution is awardable if the defendant's criminal conduct was both a "but for" cause and the proximate cause of the victim's injury. As the *Corbus* case illustrates, restitution for physical injury may be awardable even if the criminal conduct involves neither the defendant physically touching the victim nor an intent to cause injury to the victim. The mere fact that physical touching was not an element of the offense for which Eddins was convicted does not relieve him of restitution responsibility for injuries that were nevertheless actually and proximately caused by his criminal behavior.

It follows that the district court properly found that Hight's injury was proximately caused by Eddins' criminal conduct. Eddins has not shown that the trial court erred by ordering that he pay restitution.

### III.

### CONCLUSION

Eddins has not shown that his conviction was tainted by fundamental error or that the order awarding restitution was erroneous. Therefore, the judgment of conviction and order granting restitution are affirmed.

Judge MELANSON **CONCURS.**

Chief Judge GUTIERREZ **CONCURRING IN PART AND DISSENTING IN PART**.

The Idaho Supreme Court has reminded the Idaho judiciary that restitution is not a substitute for a civil action. In *State v. Straub*, 153 Idaho 882, 890, 292 P.3d 273, 281 (2013), the court explained:

10

The restitution statute was never meant to be a substitute for a civil action where the law is settled as to damages and the quantum of admissible proof needed to prove those damages. If we allow all foreseeable damages to be clothed in criminal restitution, we will draw to a standstill an already overburdened criminal court process. Prosecutors and criminal defense attorneys would then have to engage in civil discovery and trials of a civil nature on top of already complex criminal procedure and trials.

Eddins' case is one of those cases where a civil action is the appropriate proceeding for the victim, Hight, to pursue damages. For the reasons that follow, I concur in part II, section A of the majority opinion, but I respectfully dissent from part II, section B affirming the district court's order of restitution.

Under the statutory scheme of Idaho Code § 19-5304, a district court is directed to award a victim economic losses incurred by the victim that were actually and proximately caused by the defendant's already adjudicated criminal act, unless inappropriate or undesirable. *State v. Corbus*, 150 Idaho 599, 602, 249 P.3d 398, 401 (2011). Heeding the advisory given by the Idaho Supreme Court, I am persuaded that this is a case where it would be inappropriate or undesirable to award restitution to Hight through the statutory restitution process. The appropriate proceeding, in this case, for addressing the issues of causation, and potentially comparative fault or a similar principle, is a civil action.

Eddins was acquitted of aggravated battery and instead found guilty of aggravated assault. As the majority deduces, "the jury appears to have found that Eddins committed an assault by threatening to do violence to Hight." Thus, the assault, through a threat of violence, is the criminal act from which statutory restitution must be causally related. The majority proffers two cases, *State v. Cottrell*, 152 Idaho 387, 271 P.3d 1243 (Ct. App. 2012), and *Corbus*, 150 Idaho 599, 249 P.3d 398, to support its conclusion that Hight suffered economic loss or injury as a result of the defendant's criminal act, I.C. § 19-5304(1)(e)(i). However, Eddins' case is not as clear cut as the majority makes it out to be. There are several significant ways in which the instant case is distinguished from those cases with respect to the restitution issue.

One of the significant distinctions is that this case was tried before a jury and the jury trial resulted in an acquittal of the aggravated battery charge; both *Cottrell* and *Corbus* involved guilty pleas. In both *Cottrell* and *Corbus*, the underlying cause of the economic loss was apparent and the facts as to the cause were undisputed. In Eddins' case, the parties have conflicting testimony, recalling different versions of the incident that resulted in Hight incurring

acid burns.[1]  Thus, this case has open questions relating to actual cause and proximate cause. Moreover, this case raises the issue of comparative fault or a similar concept that was not present in either *Cottrell* or *Corbus*.

The primary issue in *Cottrell* was whether Cottrell's obstruction of a police officer was the actual cause of the officer's injury.  The officer was arresting Cottrell when Cottrell failed to put his hands behind his back as instructed.  When the officer attempted to gain control over Cottrell, the officer twisted his knee.  The magistrate awarded restitution in relation to the knee injury.  On appeal, Cottrell asserted that the officer's injury was not caused by his conduct.  We concluded that the actual cause was satisfied because evidence showed "*it was Cottrell's acts of attempting to pull away from [the officer] during arrest that precipitated the need for [the officer] to gain control of Cottrell and, in so doing, twist his knee.*"  *Cottrell*, 152 Idaho at 393, 271 P.3d at 1249 (emphasis added).

The officer in *Cottrell* was trying to effectuate an arrest when Cottrell began his criminal act of obstructing an officer.  During the criminal act, the officer reasonably responded by attempting to gain control of Cottrell and twisted his knee while Cottrell was still committing the criminal act.  When Cottrell's criminal act ended and he was under control again, the officer had already injured his knee.  Accordingly, restitution was proper because during and as a result of the criminal act, the officer suffered an injury that resulted in an economic loss.  In contrast to *Cottrell*, when Eddins' criminal act was completed, the victim was still uninjured--Eddins' criminal act of aggravated assault by threat was complete once the threat had been made.  As noted below, what happened after Eddins made the threat is unclear.

The primary issue in *Corbus* was whether a victim's act, taken to escape a situation, was proximately caused by Corbus' criminal act.  In *Corbus*, the Idaho Supreme Court addressed the award of restitution to a victim who was, in essence, trapped inside Corbus' vehicle while

---

[1]    Hight testified that he was driving his car when he saw Eddins.  According to Hight, Eddins saw the car and chased after it; Hight then stopped the car and got out of it to confront Eddins.  Hight recalls that Eddins charged at him, saying something unintelligible, and then hit him in the face with a bottle of acid.

Eddins testified that he saw Hight in Hight's car, that he was concerned that Hight would steal his property, and thus he followed Hight's car.  According to Eddins, Hight stopped and exited the car and got "right up in [his] face."  Eddins then testified that he told Hight, "Back off, man, I have acid."  Hight then escalated the confrontation by pushing Eddins and, according to Eddins, this push resulted in acid splashing over both of them.

Corbus was driving his vehicle at night with the headlights disengaged and reaching speeds in excess of 100 mph during a police chase. The victim escaped the situation by taking flight-- jumping from the vehicle when the vehicle had slowed to approximately 50 mph to make a turn. The victim suffered injuries as a result of jumping from Corbus' vehicle. Corbus challenged the finding of proximate cause, contending that the victim's act of jumping from the vehicle was not proximately caused by Corbus' criminal conduct. *Corbus*, 150 Idaho at 604-05, 249 P.3d at 403-04. The Court disagreed because the facts demonstrated that Corbus had created a dangerous situation and it was reasonably foreseeable for the victim to jump out of the vehicle to avoid more serious injuries resulting from Corbus' driving. *Id.* at 604-05, 249 P.3d at 403-04. "This is especially true given that jumping from the vehicle *was* the only means available to the [the victim] to escape the dangerous situation." *Id.* at 605, 249 P.3d at 404.

In this case, it has not been established what act caused the acid to splash on Hight or what happened after the presumed threat. Thus, in contrast to *Corbus*, I cannot determine that there are similar circumstances, such as that Hight's actions were reasonably foreseeable to escape or protect himself from the dangerous conditions created by Eddins' criminal conduct.

Hight's and Eddins' conflicting testimony resulted in the jury acquitting Eddins of aggravated battery. The majority hypothesizes that "the jury could have found that Hight responded to Eddins' threat by pushing Eddins, causing the bottle of acid to spill over both men." However, the purpose of the statutory restitution process is to award those economic losses *caused by the already adjudicated criminal act*; the purpose is not to search for or speculate as to what act caused the damage.

The uncertainty as to what act caused the injury separates Eddins' case from *Cottrell* and *Corbus*. In *Cottrell*, it was undisputed that the officer injured his leg while regaining control over Cottrell during the commission of Cottrell's criminal act of obstruction. In *Corbus*, it was undisputed that the victim was injured as a result of jumping from the vehicle during Corbus' commission of his criminal acts of reckless driving and eluding a police officer. In this case, the jury presumably found that there was a threat, but there was some other event that occurred between the completion of the criminal act and the injury in this case. It has not been established what the other event is because of the jury's bifurcated verdict and conflicting testimony from Eddins and Hight.

Whether the other event that occurred after the threat was an intervening cause or was reasonably foreseeable as a natural consequence of the threat is a question properly left to be answered in a civil action. This case also raises the issue of whether Hight contributed to his own injury by grabbing the bottle or aggressing in some way against Eddins. Indeed, under comparative fault or a similar principle, Hight's potential recovery in a civil action may be reduced or rejected.

In sum, we are bound by the framework of section 19-5304, as interpreted by the Idaho Supreme Court in *Straub*. Because of the uncertainties caused by the bifurcated jury verdict and conflicting testimony in this case, an award of restitution to Hight is inappropriate or undesirable. The cause of Hight's damages is better left to be addressed under the well-established principles and procedures of civil law.