**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 35436**

| | |
|---|---|
| STATE OF IDAHO, )<br><br>    Plaintiff-Respondent, )<br><br>v. )<br><br>SCOTT ERICKSON, )<br><br>    Defendant-Appellant. )<br>_____ ) | **2010 Opinion No. 14**<br><br>**Filed: March 1, 2010**<br><br>**Stephen W. Kenyon, Clerk** |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bear Lake County. Hon. David C. Nye, District Judge.

Judgment of conviction for two counts of sexual abuse of a child, <u>vacated</u>, and <u>case remanded</u> for new trial.

Molly J. Huskey, State Appellate Public Defender; Heather M. Carlson, Deputy Appellate Public Defender, Boise, for appellant. Heather M. Carlson argued.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cudé, Deputy Attorney General, Boise, for respondent. Rebekah A. Cudé argued.

_____

LANSING, Chief Judge

A jury found Scott Erickson guilty of two counts of sexual abuse of a child. Erickson appeals from the judgment of conviction, asserting numerous instances of prosecutorial misconduct during trial. He also argues that the district court erred in holding that the State did not make discriminatory use of peremptory challenges to exclude male jurors and erred in admitting improper character evidence. Erickson asserts that these errors individually and cumulatively deprived him of his right to a fair trial.

## I.

## BACKGROUND

Erickson was charged with three counts of lewd conduct with a minor child under sixteen, Idaho Code § 18-1508, based upon allegations of sexual conduct with his stepdaughter, L.H., and his biological daughter, C.E., when each was about ten years old. A jury found him

1

guilty of two counts of the lesser offense of sexual abuse of a minor, I.C. § 18-1506, and not guilty of the third count. Erickson contends on appeal that many errors, some objected to and some not, were made during his trial, including multiple instances of prosecutorial misconduct, errors in the admission of evidence, and the allowance of gender discrimination through the State's use of peremptory challenges to prospective jurors.

## II.

## ANALYSIS

### A. Error in Admitting Evidence of Nonpayment of Child Support

Erickson first contends that the district court erroneously admitted evidence that he was not paying child support after separation from his estranged wife, Tammy. Erickson called Tammy to testify regarding the volatility of their separation in an effort to support his defense that the children's allegations against him were prompted by Tammy or were otherwise simply a result of this very tempestuous relationship. Some of the testimony centered around a dispute between Erickson and Tammy over who should have possession of a truck. The evidence showed that Tammy took the truck from the residence of Erickson's parents, after which Erickson retrieved the truck with the assistance of a sheriff's deputy. On rebuttal, the State called Tammy as a witness and asked her to explain the circumstances of her taking the truck. The prosecutor asked, "Now at that time were you getting any child support?" Erickson objected that this called for improper character evidence. The prosecutor responded that he was just trying to show Tammy's "desperate need for a vehicle." The court overruled the objection, and Tammy responded that she was not receiving any child support. Erickson argues that the admission of this evidence was error.

We agree that this evidence should have been excluded because it was not relevant to any issue in the case. To be relevant, evidence must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Idaho Rule of Evidence 401. Whether evidence is relevant is a question of law that we freely review. *State v. Sheldon*, 145 Idaho 225, 228, 178 P.3d 28, 32 (2008). Whether Erickson was paying child support has no relevance to whether he committed the charged crimes. Even if Tammy's state of poverty had some marginal relevance to explain why she took the truck--a matter that was placed in evidence by Erickson--the testimony in

2

question did not indicate that she was impoverished; it merely indicated that she had no income from Erickson. The district court erred by admitting this evidence.

**B.      Prosecutorial Misconduct**

Erickson claims there were numerous instances of prosecutorial misconduct in the opening statement, closing argument, and evidentiary stages of his trial. Because we conclude that at least three of these claims are meritorious and, along with the evidentiary error discussed in Section A above, cumulatively constitute reversible error, we do not address the remaining instances of alleged prosecutorial misconduct.

The Idaho Supreme Court recently discussed the responsibility of prosecutors and the standard of review applied to appellate claims of prosecutorial misconduct:

> As public officers, prosecutors have a duty to ensure that defendants receive fair trials. *State v. Irwin*, 9 Idaho 35, 43-44, 71 P. 608, 610-11 (1903). In carrying out this duty, a prosecutor must "guard against anything that would prejudice the minds of the jurors, and tend to hinder them from considering only the evidence introduced." *Id.* at 44, 71 P. at 611. A prosecutor must also ensure that the jury receives only competent evidence. *State v. Christiansen*, 144 Idaho 463, 469, 163 P.3d 1175, 1181 (2007). Under certain circumstances, a prosecutor's failure to fulfill these duties will result in reversal of the defendant's conviction. *Id.*
>
> On appeal, the standard of review governing claims of prosecutorial misconduct depends on whether the defendant objected to the misconduct at trial. As a general rule, we will not consider arguments made for the first time on appeal. *State v. Sharp*, 101 Idaho 498, 503, 616 P.2d 1034, 1039 (1980). When the alleged error constitutes a fundamental error, however, review on appeal is permissible. *State v. Haggard*, 94 Idaho 249, 251, 486 P.2d 260, 262 (1971). Accordingly, when an objection to prosecutorial misconduct is not raised at trial, the misconduct will serve as a basis for setting aside a conviction only when the "conduct is sufficiently egregious to result in fundamental error." *State v. Porter*, 130 Idaho 772, 785, 948 P.2d 127, 140 (1997). Misconduct will be regarded as fundamental error when it "goes to the foundation or basis of a defendant's rights or . . . to the foundation of the case or take[s] from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive." *State v. Bingham*, 116 Idaho 415, 423, 776 P.2d 424, 432 (1989) (quoting *State v. Garcia*, 46 N.M. 302, 128 P.2d 459, 462 (1942)). "However, even when prosecutorial misconduct has resulted in fundamental error, the conviction will not be reversed when that error is harmless." *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). Under the harmless error doctrine, a conviction will stand if the Court is convinced beyond a reasonable doubt that the same result would have been reached by the jury had the prosecutorial misconduct not occurred. *State v. LaMere*, 103 Idaho 839, 844, 655 P.2d 46, 51 (1982).

Conversely, when an objection to alleged prosecutorial misconduct is raised at trial, we use a two-part test to determine whether the misconduct requires reversal. *See*, *e.g.*, *State v. Reynolds*, 120 Idaho 445, 448, 816 P.2d 1002, 1005 (Ct. App. 1991). First, we ask whether the prosecutor's challenged action was improper. *State v. Romero-Garcia*, 139 Idaho 199, 202, 75 P.3d 1209, 1212 (Ct. App. 2003). If it was not, then there was no prosecutorial misconduct. *Id.* If the conduct was improper, we then consider whether the misconduct "prejudiced the defendant's right to a fair trial or whether it was harmless." *Id.* The defendant carries the burden of proving prejudice. *State v. Wright*, 97 Idaho 229, 232, 542 P.2d 63, 66 (1975). When a defendant is unable to demonstrate prejudice, the misconduct will be regarded as harmless error. *State v. Garcia*, 100 Idaho 108, 111, 594 P.2d 146, 149 (1979).

*State v. Severson*, 147 Idaho 694, 715-16, 215 P.3d 414, 435-36 (2009).

### 1. Questioning witness in violation of a prior district court ruling

Before trial, Erickson sought to exclude any evidence of his history of drug use. The district court held that any evidence pertaining to Erickson's use or possession of illegal drugs could not be presented to the jury unless the court permitted it after conducting a hearing outside the jury's presence. During trial, Erickson called his father, Glade Erickson (Glade), to testify about the strained relationship between Erickson and Tammy as a possible motive for the victims to fabricate their allegations of lewd conduct. Glade testified to the incident where Tammy took the truck from Glade's house. Glade said that later, after Erickson was arrested on the lewd conduct charges, Glade told Tammy that she could come and get the truck. On cross-examination, the prosecutor asked whether Glade knew if there were any illegal substances found in that vehicle. Before Glade answered, Erickson objected and, after the jury was excused, the prosecutor explained he was presenting the testimony to support his theory that Erickson and his family turned over the truck with drugs in it in order to frame Tammy for possession of the drugs. The court sustained Erickson's objection to this evidence, but no jury instruction to disregard the question was asked for or given. Erickson argues on appeal that the question itself amounted to prosecutorial misconduct because it violated the prior district court ruling.

We agree. Violation of a district court order governing the presentation of evidence may constitute misconduct. *Field*, 144 Idaho at 572, 165 P.3d at 286; *State v. Martinez*, 136 Idaho 521, 525, 37 P.3d 18, 22 (Ct. App. 2001); *State v. Agundis*, 127 Idaho 587, 594-97, 903 P.2d 752, 759-62 (Ct. App. 1995). Misconduct may also occur through the interjection of inadmissible evidence into a trial by phrasing a question in a manner that allows the jury to infer

what the answer would have been. In *State v. Christiansen*, 144 Idaho 463, 469, 163 P.3d 1175, 1181 (2007), our Supreme Court said:

> We long ago held, "It is the duty of the prosecutor to see that a defendant has a fair trial, and that nothing but competent evidence is submitted to the jury." *State v. Irwin*, 9 Idaho 35, 44, 71 P. 608, 611 (1903). They should not "exert their skill and ingenuity to see how far they can trespass upon the verge of error, [because] generally in so doing they transgress upon the rights of the accused." *Id.* Prosecutorial misconduct includes asking questions where the answer is inadmissible, but the jury can infer what the answer would have been simply from the questioned [sic] asked. *Id.*

Although Erickson's objection to the prosecutor's question was sustained, the question itself informed the jury that drugs were found in Erickson's vehicle. This evidence of drug possession was highly prejudicial and irrelevant to the charges that were being tried against Erickson, and was therefore inadmissible under Idaho Rules of Evidence 402, 403 and 404(b).

We are not persuaded by the State's argument that the prosecutor's question did not directly imply that Erickson used or possessed drugs or that there was no prosecutorial intent to create that impression. The jury very likely would infer that the drugs belonged to Erickson. Moreover, even the prosecutor's claimed purpose for introducing the evidence--ascribing to Erickson or his father the misconduct of trying to frame Tammy--appears to be irrelevant to the issues at trial. Whatever the prosecutor's intent, it was misconduct for him to violate the court's pretrial order concerning this evidence.

### 2. Fifth Amendment violation

Erickson alleges the prosecutor's elicitation of testimony that Erickson refused to be interviewed regarding the investigation was misconduct amounting to fundamental error. At trial, Erickson presented testimony from Detective Toni Vollmer that the alleged victims had initially made some false statements to investigators and that the victims' descriptions of Erickson's misconduct given to the detective differed from their trial testimony. On cross-examination, the prosecutor asked Detective Vollmer whether she had ever attempted to interview Erickson concerning the girls' allegations and whether Erickson cooperated with those attempts. She testified that she telephoned Erickson twice, but he refused to be interviewed. The prosecutor also asked whether soliciting an accused's side of the story is a typical investigative technique. The prosecutor did not refer to this testimony in closing arguments, and did not ask any other follow up questions that would indicate a purpose for eliciting this information. Although Erickson made no objection to this line of inquiry at trial, he now argues that the

5

prosecutor violated his right against self-incrimination by informing the jury that Erickson declined to talk to investigators about the charges. Because this issue was not preserved by objection below, we review it only for fundamental error.

The State may not use evidence of a defendant's refusal to speak with law enforcement authorities--an exercise of the defendant's Fifth Amendment right to remain silent--to raise an inference of the defendant's guilt. *State v. Moore*, 131 Idaho 814, 820-21, 965 P.2d 174, 180-81 (1998); *State v. Stefani*, 142 Idaho 698, 701, 132 P.3d 455, 458 (Ct. App. 2005); *State v. Kerchusky*, 138 Idaho 671, 677, 67 P.3d 1283, 1289 (Ct. App. 2003). A prosecutor's violation of this constitutional prohibition constitutes fundamental error. *Id.* at 678, 67 P.3d at 1290. A defendant who has testified at trial may be impeached, however, with evidence of his or her silence before receiving *Miranda* warnings. *Brecht v. Abrahamson*, 507 U.S. 619, 628 (1993); *Moore*, 131 Idaho at 820, 965 P.2d at 180; *State v. Lopez*, 141 Idaho 575, 577, 114 P.3d 133, 135 (Ct. App. 2005).

In this case, the evidence of Erickson's refusal to speak with police was not offered for impeachment purposes, for Erickson did not testify. Its only use was for the impermissible purpose of implying that Erickson's non-cooperation evidenced his guilt. The prosecutor's effort to cloak this evidence as an inquiry into standard investigative practices is of no avail, for the nature of standard investigative techniques was of no relevance in Erickson's trial. The elicitation of evidence that Erickson exercised his right to remain silent is a clear constitutional violation. Indeed, the State on appeal does not dispute that this was fundamental error; it argues only that the error was harmless, a matter that we discuss in Section C below.

### 3. Misconduct in closing argument

We next consider Erickson's argument that the prosecutor committed misconduct amounting to fundamental error in closing argument when he urged the jury to apply a diminished burden of proof. Closing argument is an opportunity for the attorneys on each side to clarify the issues that must be resolved by the jury; to review the evidence and discuss, from the parties' respective standpoints, the inferences that jurors should draw therefrom; and to discuss the law set forth in the jury instructions as it applies to the trial evidence. *State v. Beebe*, 145 Idaho 570, 576, 181 P.3d 496, 502 (Ct. App. 2007). "Urgings, explicit or implied, for the jury to render a verdict based on factors other than the evidence admitted at trial and the law contained in the jury instructions have no place in closing arguments." *Id.* Misconduct may occur by the

6

prosecutor diminishing or distorting the State's burden to prove the defendant's guilt beyond a reasonable doubt. *State v. Raudebaugh*, 124 Idaho 758, 769, 864 P.2d 596, 607 (1993); *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007).

The requirement that the State prove every element of a crime beyond a reasonable doubt is grounded in the constitutional guarantee of due process. *Jackson v. Virginia*, 443 U.S. 307, 309 (1979); *State v. Mubita*, 145 Idaho 925, 942, 188 P.3d 867, 884 (2008); *State v. Crowe*, 135 Idaho 43, 47, 13 P.3d 1256, 1260 (Ct. App. 2000). This standard of proof "plays a vital role in the American scheme of criminal procedure" because it "provides concrete substance for the presumption of innocence--that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.'" *In re Winship*, 397 U.S. 358, 363 (1970) (quoting *Coffin v. United States*, 156 U.S. 432, 453 (1895)). It follows that a misstatement to a jury of the State's burden rises to the level of fundamental error because it goes to the foundation of the case and would take away from a defendant a right essential to his or her defense. *Raudebaugh*, 124 Idaho at 769, 864 P.2d at 607.

In the present case, near the conclusion of his rebuttal closing argument, the prosecutor made the following statements:

> *You set the standard for law enforcement. We look at these cases very carefully. What is the standard in Bear Lake County by a jury on what they're going to accept as proof of child molestation? That's all it's about.*
> And if you're saying Mr. Helm, [L.H.], [C.E.], Officer Martinez, it's just not there, I've got to have more than this, we understand that, *but there is also a downside to it. I can't bring you the perfect case. There will always be the possibility there.* I bring you two people molested by their father at pretty much the same age. One gives credibility to the other. One collaborates [sic] the other. The pattern is similar. You as a juror are saying I don't believe either one of them.
> Ladies and gentlemen, I tell you this is proof beyond a reasonable doubt. Justice demands that this father, this defendant, be convicted.

Erickson correctly asserts that the italicized portions of this argument were improper because they misrepresented and diminished the State's burden of proof. In suggesting that the jury should "set the standard" for the prosecutor and law enforcement in Bear Lake County "on what [a jury is] going to accept as proof of child molestation," the prosecutor invited the jury to create its own standard of proof instead of applying the reasonable doubt standard stated in its jury instructions. Then by stating "there is a downside" to finding the defendant not guilty because the prosecutor could never bring a "perfect case" for child molestation crimes, the prosecutor implied that the jury should find the evidence in Erickson's case sufficient to convict because it

7

was the best the prosecutor could do. It also implied that if the jury did not convict in this case, the standard would be such that no one accused of this type of offense could be convicted. Because misstating the burden of proof deprives the defendant of a right essential to his defense and goes to the foundation of the case, this was fundamental error.

## C.      Harmless Error Analysis

We have found trial court error in admitting evidence of Erickson's nonpayment of child support, prosecutorial misconduct in the prosecutor's violation of a pretrial order by questioning a witness about the presence of drugs in Erickson's truck, misconduct amounting to fundamental error in the elicitation of evidence that Erickson declined to speak to a detective, and fundamental error in the prosecutor's mischaracterization of the burden of proof during closing argument. The next question is whether these errors require reversal of Erickson's conviction or whether they are harmless.

Error will be deemed harmless if the appellate court can conclude, beyond a reasonable doubt, that the result of the trial would have been the same absent the error. *Sheldon*, 145 Idaho at 230, 178 P.3d at 33; *Phillips*, 144 Idaho at 88, 156 P.3d at 589; *State v. Pecor*, 132 Idaho 359, 368, 972 P.2d 737, 746 (Ct. App. 1998). We need not determine whether each of the identified errors, standing alone, would have been harmless because an accumulation of irregularities, each of which might be harmless in itself, may in the aggregate reveal the absence of a fair trial in contravention of the defendant's right to due process. *See State v. Payne*, 146 Idaho 548, 568, 199 P.3d 123, 143 (2008); *Moore*, 131 Idaho at 823, 965 P.2d at 183; *State v. Timmons*, 145 Idaho 279, 292, 178 P.3d 644, 657 (Ct. App. 2007).

In this case, we have little difficulty in concluding that the evidentiary error and the prosecutor's misconduct cumulatively prejudiced Erickson and necessitate a new trial. Although the trial court sustained Erickson's objection to a question about the discovery of drugs in his truck, the question itself conveyed to the jury very negative but irrelevant information about Erickson. The admission of evidence that Erickson had not been paying child support likewise impugned Erickson on a subject irrelevant to the case. By presenting evidence that Erickson chose not to speak with police, the prosecutor also improperly permitted the jury to infer evidence of guilt from Erickson's exercise of his Fifth Amendment right to remain silent. Finally, the prosecutor's distortion of the State's burden of proof in closing argument is highly prejudicial. The State's evidence at trial, while certainly sufficient to support a finding of guilt,

8

was not overwhelming. The principal evidence against Erickson was the testimony of the two alleged victims, both of whom had initially given statements to police that were inconsistent with their trial testimony. The charged offenses were reported to authorities during a time when there was a highly antagonistic relationship between Erickson and the mother of the alleged victims. On this record, we cannot say beyond a reasonable doubt that the outcome of the trial would have been the same absent the trial errors and prosecutorial misconduct that occurred. Therefore, Erickson must be afforded a new trial.

## D.    Peremptory Challenges to Jurors

For guidance on remand, we will address one additional claim of error asserted by Erickson in this appeal--that the prosecutor impermissibly used peremptory challenges to exclude males from the jury panel.

During juror voir dire, the State exercised nine peremptory challenges, using all of them to exclude male jurors. Erickson objected that this constituted impermissible gender discrimination, and he subsequently moved for a mistrial on this basis. The prosecutor responded that it exercised its peremptory challenges with the intent to empanel parents and grandparents, regardless of gender. It was only coincidence, the prosecutor said, that those who did not fit into either of those categories happened to be male. The trial court then overruled Erickson's objection. The court reasoned that: (a) because the jury was composed of seven men and six women, it was not a discriminatory panel, and (b) because white men are not a protected class, their exclusion was permissible. Erickson asserts that the trial court erred in its reasoning and that the State did not demonstrate a gender-neutral use of its peremptory challenges.

In *Batson v. Kentucky*, 476 U.S. 79 (1986), the United States Supreme Court held that discriminatory use of peremptory challenges to exclude persons from jury service on account of their race is a violation of the Equal Protection Clause of the United States Constitution. *Id.* at 85. In *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 141-42 (1994), the Court extended this application of the Equal Protection Clause to challenges that discriminate on the basis of gender. Not only the litigants, but the jurors themselves have a right to a nondiscriminatory jury selection process, and "this right extends to both men and women." *Id.* at 141.

To establish a *Batson* violation, a defendant must first make a prima facie showing of purposeful discrimination. *Batson*, 476 U.S. at 97-98; *State v. Araiza*, 124 Idaho 82, 87, 856 P.2d 872, 877 (1993). The burden then shifts to the State to produce a race-neutral or gender-

9

neutral explanation, related to the case to be tried, for challenging the prospective juror. *Batson*, 476 U.S. at 97-98; *see also Araiza*, 124 Idaho at 87, 856 P.2d at 877. It is not enough for the prosecutor to represent that he or she did not exercise its challenges on an impermissible basis; the State must provide a clear and reasonably specific explanation of legitimate reasons for exercising the challenges. *Batson*, 476 U.S. at 97-98, 98 n.20; *Araiza*, 124 Idaho at 87, 856 P.2d at 877. Where the defendant objects on the ground of gender discrimination, the State's explanation must be based on a juror characteristic other than gender, and it may not be merely pretextual. *J.E.B.*, 511 U.S. at 145. It is then for the trial court to determine whether the State's explanation has overcome the inference of purposeful discrimination established by the defendant's prima facie showing. *Id.* "In deciding if the defendant has carried his burden of persuasion, a court must undertake 'a sensitive inquiry into such circumstantial and direct evidence of intent as may be available.'" *Batson*, 476 U.S. at 93 (quoting *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 266 (1977)). A trial court's findings concerning the validity of the State's explanation for exercising the peremptory challenges is reviewed on appeal for clear error in light of the facts as a whole. *Araiza*, 124 Idaho at 87, 856 P.2d at 877; *State v. Owen*, 129 Idaho 920, 933, 935 P.2d 183, 196 (Ct. App. 1997).

In this case, the trial court held that the defendant had not shown a prima facie case of purposeful discrimination because white men are not a protected class and because the jury empanelled was gender-balanced. The district court's reasoning was erroneous. The United States Supreme Court held in *J.E.B.* that the right to nondiscriminatory jury selection applies to males as well as females. Further, the correct query is whether the State engaged in purposeful discrimination, not whether it succeeded in obtaining an unbalanced panel.

Erickson made a prima facie showing of discriminatory use of peremptory challenges to exclude male jurors. The prosecutor then articulated a specific gender-neutral reason for its challenges--that it was trying to empanel parents and grandparents. Erickson argues, however, that the State's gender-neutral explanation is belied by the fact that two of the nine challenged jurors had children. Because the court rejected Erickson's *Batson* challenge for incorrect reasons, it did not go forward to determine whether the State's rationale for its peremptory challenges was plausible and legitimate or only a cover for an effort to minimize the number of males on the jury. If at a trial on remand a similar use of peremptory challenges is shown, it will

be up to the trial court to determine whether any gender-neutral explanation given by the prosecutor is legitimate or merely pretextual.

## III.
## CONCLUSION

Due to prosecutorial misconduct and erroneous admission of evidence, the judgment of conviction is reversed, and the case is remanded for a new trial.

Judge GRATTON and Judge MELANSON **CONCUR.**