**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 42155**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | 2015 Opinion No. 62 |
| | ) | |
| **Plaintiff-Respondent,** | ) | Filed: October 2, 2015 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| **JUAN ROBERTO JIMENEZ,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Randy J. Stoker, District Judge.

Judgment of conviction and sentences for aggravated battery with a firearm and unlawful possession of a firearm, with a persistent violator enhancement, affirmed.

Sara B. Thomas, State Appellate Public Defender; Jason C. Pintler, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Nicole L. Schafer, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

Juan Roberto Jimenez appeals from his judgment of conviction after he was found guilty of aggravated battery with a firearm and unlawful possession of a firearm, as well as being a persistent violator. For the reasons set forth below, we affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Jimenez and his brother, Jorge Alvarado, had a tense relationship. On February 9, 2013, the two engaged in several heated telephone conversations, concluding with Alvarado telling Jimenez he was coming over to Jimenez's house. In response to this perceived threat, Jimenez secured a gun from a friend. When Alvarado arrived, he got out of his car in front of Jimenez's house. The details of the events following Alvarado's arrival are disputed. During trial, Jimenez

1

testified that he discharged warning shots into the ground in response to Alvarado's threats and advances and that Alvarado was armed and pointing a gun at his head. In contrast, Alvarado testified that he was unarmed, having left his gun in his car, and that Jimenez shot him twice initially and then another three or four times after Alvarado tripped over a curb and fell to the ground. Alvarado sustained two bullet wounds in each leg and one bullet wound in his lower back.

Jimenez was charged with aggravated battery enhanced with the use of a firearm in its commission, Idaho Code §§ 18-903, 18-908, 19-2520, and with unlawful possession of a firearm with a persistent violator sentence enhancement, I.C. §§ 18-3316, 19-2514. Jimenez requested a self-defense instruction during the jury instruction conference. The court gave the pattern jury instructions for self-defense, Idaho Criminal Jury Instructions 1517, 1518, and 1519. Jimenez did not object to those instructions. Each of them referenced a "reasonable person" standard. During closing arguments, the prosecutor suggested that the jurors themselves were the "community 'reasonable person.'" The jury found Jimenez guilty of aggravated battery with a weapons enhancement, unlawful possession of a firearm, and being a persistent violator of the law.

Prior to sentencing, Jimenez filed a motion for a new trial, citing to newly discovered evidence. He supported his motion with affidavits from two witnesses who swore to having conversations with Alvarado after the encounter at issue. The witnesses averred that Alvarado made statements regarding his stashing of the gun after being shot and his intent to harm Jimenez during the encounter. The district court denied this motion, finding that the newly discovered evidence would not probably produce an acquittal.

The district court sentenced Jimenez to a unified sentence of twenty-eight years with eight years determinate on the aggravated battery conviction and a concurrent sentence of five years determinate for the unlawful possession of a firearm conviction. Jimenez appeals.

## II.

## ANALYSIS

Jimenez raises four issues on appeal. First, Jimenez contends that the district court committed fundamental error by providing an erroneous self-defense jury instruction. Second, he contends that the prosecutor committed misconduct during closing arguments by mischaracterizing the "reasonable person" standard and that this misconduct constituted

2

fundamental error. Third, Jimenez argues that the district court abused its discretion in denying his motion for a new trial. Finally, Jimenez asserts that the district court abused its sentencing discretion. We address each issue in turn.

## A.     Jury Instructions

Jimenez argues the trial court committed fundamental error by providing an erroneous jury instruction relating to his self-defense claim. Whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Severson*, 147 Idaho 694, 710, 215 P.3d 414, 430 (2009). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Bowman*, 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct. App. 1993). Here, Jimenez requested the court give the jury a self-defense instruction and did not object to the pertinent jury instruction at trial.

Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). However, when a defendant fails to object to a jury instruction before the trial court, we will still review the jury instruction for fundamental error. *State v. Adamcik*, 152 Idaho 445, 472, 272 P.3d 417, 444 (2012). To prove fundamental error, a defendant must persuade the court that the alleged error: (1) violated one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affected the outcome of the trial proceedings. *State v. Perry*, 150 Idaho 209, 226, 245 P.3d 961, 978 (2010).

The instruction Jimenez takes issue with is the standard Idaho Criminal Jury Instruction 1517. This instruction enumerates the five elements required to find that a defendant acted in self-defense: (1) the defendant must have believed that the defendant was in imminent danger of bodily harm; (2) the defendant must have believed that the action the defendant took was necessary to save the defendant from the danger presented; (3) a reasonable person, under similar circumstances, would have believed that the defendant was in imminent danger of bodily injury and believed that the action taken was necessary; (4) the defendant must have acted only in response to that danger and not for some other motivation; and (5) the defendant's right of self-defense ends when there is no longer any reasonable appearance of danger. I.C.J.I. 1517. Once a defendant asserts self-defense, the burden is on the prosecution to prove beyond a

3

reasonable doubt that the defendant has not established at least one of the elements of self-defense.  I.C.J.I. 1517.

Jimenez argues the fourth element of the standard instruction misstates the law by instructing the jury that self-defense is only available where the defendant acts in response to the danger presented and "not for any other motivation."  He contends that this instruction suggests that a defendant's use of self-defense is not justifiable if the defendant, in addition to responding to the danger presented, *is also* motivated to act by some other factor.  According to Jimenez, this alleged misstatement effectively diminished the State's burden of proof, allowing the State to disprove Jimenez's affirmative defense by showing that he *also* acted out of "anger or to teach [Alvarado] a lesson."  Jimenez avers that diminishing the State's burden of disproving his affirmative defense violated his constitutional right to due process, thereby satisfying the first prong of the *Perry* analysis.  He suggests that "allowing the State to disprove a fact that is not an element of self-defense is the equivalent of not requiring the State to disprove self-defense at all."  This raises the question of whether the Due Process Clause of the United States Constitution or the Due Process Clause of the Idaho Constitution requires the State to disprove a defendant's affirmative defense.  We hold that they do not.[1]

"In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement."  *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (per curiam).  However, the Due Process Clause of the United States Constitution does not require the State to disprove a defendant's affirmative defense.  *See Martin v. Ohio*, 480 U.S. 228, 236 (1987); *Patterson v. New York*, 432 U.S. 197, 210 (1977).  In *Martin*, the United States Supreme Court reiterated its holding in *Patterson*, acknowledging that when the Fifth Amendment was adopted and the Fourteenth Amendment ratified, the common-law rule regarding affirmative defenses, including self-defense, imposed the burden of proof upon the defendant.  *Martin*, 480 U.S. at 235-36.  Although many states subsequently abandoned

---

[1]     The Idaho Constitution contains a provision protecting a defendant's right to due process that is nearly identical to the Fourteenth Amendment.  *Compare* IDAHO CONST. art I, § 13 ("No person shall . . . be deprived of life, liberty or property without due process of law.") *with* U.S. CONST. amend. XIV § 1 ("nor shall any State deprive any person of life, liberty, or property, without due process of law").  Jimenez provides no argument for why this Court should interpret the Idaho Constitution differently than the United States Constitution to support his claim of a due process violation.  And, we find no reason to interpret the Idaho Constitution as providing more protection of a defendant's right to due process than the United States Constitution.

4

the common-law rule--requiring the prosecution to prove the absence of self-defense once properly raised by the defendant--such practice was not constitutionally required. *Id.* The Court held that states continuing with the common-law practice of requiring defendants to prove their affirmative defense did not violate the Constitution. *Id.*

The Idaho Supreme Court has followed this precedent, holding that a shift in the burden of persuasion from the State to a defendant does not implicate the Constitution. *State v. Mubita*, 145 Idaho 925, 942, 188 P.3d 867, 884 (2008), *abrogated in part on other grounds by Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 265 P.3d 502 (2011). Therefore, contrary to Jimenez's assertion, there can be no violation of the United States Constitution or the Idaho Constitution when a jury instruction merely diminishes the State's burden of disproving a defendant's affirmative defense.

Even if we were to assume that the instruction did, in fact, misstate the law[2] and diminish the State's burden of disproving Jimenez's affirmative defense, this does not constitute a violation of Jimenez's due process rights under the United States Constitution or the Idaho Constitution. Jimenez has failed to meet his burden of proof under the first prong of the *Perry* analysis. Therefore, Jimenez has not demonstrated fundamental error.

**B.      Prosecutorial Misconduct**

Jimenez next contends that the prosecutor committed misconduct by misstating the law regarding the reasonable person standard during closing arguments. Specifically, Jimenez asserts that the prosecutor's conduct "invit[ed] the jury to create their own 'reasonable person' standard, which deprived Mr. Jimenez of a right essential to his self-defense assertion" and violated his "due process right to a fair trial."

Jimenez made no contemporaneous objection to the prosecutor's closing statement at trial. In *Perry*, the Idaho Supreme Court clarified the fundamental error doctrine as it applies to allegations of prosecutorial misconduct. *Perry*, 150 Idaho 209, 245 P.3d 961. If the alleged misconduct was not followed by a contemporaneous objection, an appellate court should reverse when the defendant persuades the court that the alleged misconduct rises to the level of fundamental error. *Id.* at 228, 245 P.3d at 980.

_____

[2]      This Court remains mindful that the Idaho Criminal Jury Instructions are deemed presumptively correct. *See McKay v. State*, 148 Idaho 567, 571 n.2, 225 P.3d 700, 704 n.2 (2010); *State v. Merwin*, 131 Idaho 642, 647, 962 P.2d 1026, 1031 (1998).

The reasonable person language Jimenez takes issue with on appeal appeared in the self-defense jury instruction, I.C.J.I. 1517:

> 3. The circumstances must have been such that a *reasonable person*, under similar circumstances, would have believed that the defendant was in imminent danger of bodily injury and believed that the action taken was necessary.
> . . . .
> In deciding upon the reasonableness of the defendant's beliefs, you should determine what an ordinary and *reasonable person* might have concluded from all the facts and circumstances which the evidence shows existed at that time, and not with the benefit of hindsight.
> The danger must have been present and imminent, or must have so appeared to a *reasonable person* under the circumstances. A bare fear of bodily injury is not sufficient to justify a battery. The defendant must have acted under the influence of fears that only a *reasonable person* would have had in a similar position.

(emphasis added). The prosecutor referenced the reasonable person standard to the jury early during his closing arguments, prior to discussing I.C.J.I. 1517:

> You are allowed and encouraged under [Instruction 2] to use your everyday experiences and your common sense to decide what happened because you, the jury, are the community "reasonable person." When the instructions that you were read indicated what would a reasonable person do, *well, you are the reasonable person*. What would a reasonable person in the community do.
> . . . And reason and common sense is going to be a constant theme in your deliberations, as I've said, that *you are the community's barometer as to what is reasonable and what a reasonable person would do under the circumstances*.

(emphasis added). Then, regarding I.C.J.I 1517, the prosecutor stated:

> Now, in order to find [Jimenez] acted in self-defense, that instruction tells you that all of these points, all these five things on that instruction have to be met. . . . Number three, that--*and this is where you get to interject your reason and common sense*--number three, that a reasonable person under similar circumstances would have believed that he was in imminent danger of bodily injury and believed, that the reasonable person would have believed that shooting his brother was necessary.

(emphasis added).

Prosecutorial misconduct may so infect the trial with unfairness as to make the resulting conviction a denial of due process under the Fourteenth Amendment to the United States Constitution. *Greer v. Miller*, 483 U.S. 756, 765 (1987); *Perry*, 150 Idaho at 227, 245 P.3d at 979; *State v. Gamble*, 146 Idaho 331, 344, 193 P.3d 878, 891 (Ct. App. 2008). To constitute a due process violation, the prosecutorial misconduct must result in the denial of the defendant's

6

right to a fair trial. *Gamble*, 146 Idaho at 344, 193 P.3d at 891. However, as discussed above, the Due Process Clause of the Fourteenth Amendment does not require the State to disprove a defendant's affirmative defense. *See Martin*, 480 U.S. at 235-36; *Mubita*, 145 Idaho at 942, 188 P.3d at 884. There can be no violation of the United States Constitution or the Idaho Constitution when the State's burden of disproving a defendant's affirmative defense is diminished.

Jimenez's prosecutorial misconduct argument is premised on the prosecutor's alleged mischaracterizations of the reasonable person standard that appeared in the self-defense jury instruction. He argues that the misstatements "invit[ed] the jury to create their own standard of proof." He points to *State v. Erickson*, 148 Idaho 679, 227 P.3d 933 (Ct. App. 2010), where the prosecutor misrepresented the standard of "proof beyond a reasonable doubt," effectively diminishing the State's burden of proving the elements of the charged crime. *Id.* at 685-86, 227 P.3d at 939-40. We held that the prosecutor's misstatement of the burden of proof deprived the defendant "of a right essential to his defense." *Id.* at 686, 227 P.3d at 940. However, this case is distinguishable from *Erickson*; the prosecutor's misstatement in *Erickson* diminished the State's burden of proof for an element of the crime, whereas the alleged misstatement here would only have diminished the State's burden of disproving an element of the defendant's affirmative defense. Jimenez does not argue that the alleged mischaracterization impacted the prosecutor's ability to establish an element of the crime itself.

Even if we were to assume that the prosecutor mischaracterized the reasonable person standard, the effect of the misstatement would have been a diminishment of the State's burden of disproving Jimenez's affirmative defense. Because neither the United States Constitution's nor the Idaho Constitution's Due Process Clause are implicated when the State's burden of disproving an affirmative defense is diminished, Jimenez has failed to meet his burden of showing fundamental error under the first prong of the *Perry* analysis.

## C.     Motion for New Trial

Jimenez also asserts that the district court erred by denying his motion for a new trial under Idaho Criminal Rule 34 and Idaho Code § 19-2406. Specifically, he argues that the court improperly concluded that the newly discovered testimonial evidence would not probably produce an acquittal.

7

The denial of a motion for a new trial is reviewed under an abuse of discretion standard. *State v. Egersdorf*, 126 Idaho 684, 687, 889 P.2d 118, 121 (Ct. App. 1995). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989). Because a motion for a new trial based upon newly discovered evidence involves both factual and legal questions, "[a]n abuse of discretion will be found if the trial court's findings of fact are not supported by substantial evidence or if the trial court does not correctly apply the law." *State v. Stevens*, 146 Idaho 139, 144, 191 P.3d 217, 222 (2008).

A motion for a new trial based on newly discovered evidence must disclose: (1) that the evidence is newly discovered and was unknown to the defendant at the time of the trial; (2) that failure to learn of the evidence was due to no lack of diligence on the part of the defendant; (3) that the evidence is material, not merely cumulative or impeaching; and (4) that it will probably produce an acquittal. *State v. Drapeau*, 97 Idaho 685, 691, 551 P. 972, 978 (1976). "Motions for a new trial based on newly discovered evidence are disfavored and should be granted with caution, reflecting the importance accorded to considerations of repose, regularity of decision making, and conservation of scarce judicial resources." *Stevens*, 146 Idaho at 144, 191 P.3d at 222.

In support of his motion for a new trial, Jimenez presented affidavits of two new witnesses who allegedly spoke with Alvarado after the incident at issue. The information within the affidavits corroborated trial testimony that Alvarado was coming over to Jimenez's house to harm him and that Alvarado had a gun during the encounter. The affidavit from the first witness stated that Alvarado told the witness, "yeah I meant to kill that fool" and that Alvarado had "stashed the gun" he had been carrying after he was shot. The affidavit from the second witness stated that the witness asked Alvarado why Jimenez would shoot him, and Alvarado responded, "Because [Jimenez] knew I was coming over to beat his ass."

During trial, Jimenez's entire defense hinged upon whether he was justified in defending himself. During the district court hearing on the motion, Jimenez asserted that "if the jury knew

8

things contained in both these affidavits in their deliberation, they probably would have acquitted the defendant." The district court disagreed.

The district court clearly acknowledged its discretion in denying Jimenez's motion for a new trial. In its ruling on the motion, the district court found that the evidence was newly discovered, its absence was not due to lack of diligence on the part of the defendant, and it was material. However, regarding the final element, the court reasoned:

> The real issue for me is that [sic] the last element, which is would this evidence probably have produced an acquittal. And as I heard this trial and I-- when the jury went out, I said to myself, you know, there's one of two things that's going to happen here. They're either going to believe that [Alvarado] had a gun, and [Jimenez] shot back at him in self-defense, which would have, in itself, have [sic] produced an acquittal, or they're going to conclude that even if all that happened, that the problem with the self-defense argument in this case is that [Jimenez] used excessive force. And the conclusion that would have supported that is that [Alvarado] was shot in the back by one of these shots. I said, I wonder how the jury's going to react to that argument, which I think is one that the State made, by showing that even though self-defense was present, you lose it if you use excessive force.
>
> You add to that a question as to the credibility of [Jimenez] himself with regard to what he did with his own gun. By that I mean there was testimony from him that he threw it out into the yard and then testimony from the police that they ultimately found it concealed under a cushion in his house. That did not sit well in terms of credibility for this defendant because I think that was a material dispute--well, not material dispute. Material difference in explaining how the incident happened. Didn't make any sense to me, and I don't know whether it made any sense to this jury or not.
>
> So here's the point I'm making: This jury certainly had evidence that they could have concluded, irrespective of the information in the affidavits of [the two witnesses], that [Alvarado], in fact, had a gun and that [Jimenez] was operating in self-defense when he shot back. All of that information was in this record, and I certainly agree with the defendant that the testimony of these two individuals would help support that finding.
>
> The other thing the jury could have concluded in this case, though, is that even if [Alvarado] had a gun, and they believed everything [Jimenez] said about the fear that he had and the fact that he saw [Alvarado] with the gun and so forth, the question is whether the number of times that he shot back at his brother was excessive, and again, it was undisputed that one of those shots was in [Alvarado's] back, which certainly would lead 12 people to conclude that's excessive force when somebody's running away from you, and you shoot them. So maybe they found the defendant guilty in this case because, A, they didn't believe the defendant's testimony and [another witness's] testimony that [Alvarado] had a gun, [Jimenez] used excessive force by shooting him in the back

> as he was retreating and thus negating the self-defense argument. I don't know. We have no way of knowing.
>
> And that's the problem with this motion for new trial, because I cannot find that even with the presentation of the two testimonies from [the two witnesses] that that would probably produce an acquittal because the jury could have found either way, and if they found the second way, in other words, under the excessive force theory, their testimony really would not have made that much difference.

The district court concluded, "[Jimenez] has not carried the burden of convincing this court that a new trial is warranted in this case." The district court based its denial upon the fourth *Drapeau* requirement. Jimenez now argues that the district court erred in finding that this requirement was not satisfied because the court based its conclusion on an erroneous presumption that Alvarado was retreating when Jimenez shot him in the back. However, the inferences that the court drew from the evidence presented during the trial are irrelevant to its finding regarding the fourth *Drapeau* element, nor are the court's inferences indicative of the jury's conclusions.

In determining whether the newly discovered evidence would probably produce an acquittal, as required under *Drapeau*, the court considered the evidence presented to the jury during the trial. Based upon that evidence, the court reasoned that the jury had substantial evidence to support its guilty verdict on one of two theories: either Alvarado was unarmed when Jimenez shot him, or Jimenez used excessive force when he acted in self-defense. The court acknowledged that because there were conflicting testimonies about the details of the encounter, the proffered evidence would help support Jimenez's self-defense argument. But because evidence suggesting that Alvarado had a gun and intended to harm Jimenez was already presented to the jury through the testimonies of a trial witness and Jimenez himself, the court was not convinced that the proffered testimonies would have enough impact to probably produce an acquittal.

We agree with the district court's assessment of the newly discovered evidence. While the testimonies would support Jimenez's self-defense claim, they did not present a novel argument for the jury to consider. We are not persuaded that merely providing the jury with *more* evidence in support of the *same* contentions that were already presented at trial would *probably* produce an acquittal. Jimenez has failed to carry his burden of proving that the evidence would go beyond the bare possibility of acquittal. *See State v. Ames*, 112 Idaho 144, 148, 730 P.2d 1064, 1068 (Ct. App. 1986) (holding that "a bare *possibility* of acquittal" is not enough to sustain a defendant's burden of proving that newly discovered evidence will *probably*

produce an acquittal) (emphasis added). Therefore, the district court did not abuse its discretion by denying Jimenez's motion for a new trial.

## D. Abuse of Discretion in Sentencing

Finally, Jimenez argues that the district court abused its discretion in sentencing. An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation, or retribution applicable to a given case. *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007). To prevail on a claim that a sentence is an abuse of discretion, the defendant must show that in light of sentencing criteria, the sentence was excessive under any reasonable view of the facts. *State v. McGiboney*, 152 Idaho 769, 773, 274 P.3d 1284, 1288 (Ct. App. 2012). Where reasonable minds might differ, we respect the discretion of the trial court and will not supplant the trial court's views with our own. *Id.*

Jimenez argues that the court abused its sentencing discretion by imposing an excessive sentence because it did not properly consider that Jimenez acted under provocation from Alvarado, as required by Idaho Code § 19-2521(2). He suggests that the court should have considered the following factors:

> (c) The defendant acted under a strong provocation;
> (d) There were substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;
> (e) The victim of the defendant's criminal conduct induced or facilitated the commission of the crime.

11

I.C. § 19-2521(2). However, as a matter of policy in Idaho, the primary consideration in sentencing is the good order and protection of society, and all other factors are subservient to that end. *State v. Hunnel*, 125 Idaho 623, 627, 873 P.2d 877, 881 (1994); *State v. Pederson*, 124 Idaho 179, 180, 857 P.2d 658, 659 (Ct. App. 1993).

During sentencing, the district court *did* consider that Jimenez acted under provocation. The court acknowledged the obviousness of existing tensions between Jimenez and Alvarado, stating it "makes no sense to me why brothers would be packing guns, potentially shooting at each other, unless there was something really, really serious happening there." It also acknowledged Jimenez's self-defense arguments, and the jury's rejection of that defense. However, the court also considered Jimenez's use of a weapon, his "character that is of an aggressive nature," and his "lack of remorse for [his] brother," concluding that Jimenez's punishment was warranted both from a deterrent standpoint and "for the good order and protection of society." Applying the appropriate standards and having reviewed the record in this case, we cannot say that the district court abused its discretion.

## IV.

## CONCLUSION

Jimenez has failed to show fundamental error regarding the alleged erroneous jury instructions and claims of prosecutorial misconduct. Further, the district court did not abuse its discretion in denying Jimenez's motion for a new trial because the newly discovered evidence would not probably produce an acquittal. Finally, the district court did not abuse its sentencing discretion. Jimenez's judgment of conviction and sentence are affirmed.

Chief Judge MELANSON and Judge GRATTON **CONCUR**.