IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 45243

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: April 12, 2019 |
| Plaintiff-Respondent, | ) |
| | ) Karel A. Lehrman, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| JOSHUA JAMES ALBERTS, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Melissa Moody, District Judge.

Judgment of conviction for murder in the second degree, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Erik R. Lehtinen, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

BRAILSFORD, Judge

Joshua James Alberts appeals from his judgment of conviction for murder in the second degree, Idaho Code §§ 18-4001, 18-4003. We affirm.

I.

FACTUAL AND PROCEDURAL BACKGROUND

In April 2015, Alberts met Briana Bliss at work and began dating her. Bliss shared two sons with her ex-husband, Joshua Warren. Alberts disliked Warren and was frightened of him. Bliss told Alberts that Warren was aggressive and had physically and emotionally abused her in the past. Alberts knew that Warren often left Bliss threatening voicemails and text messages.

A few times, Alberts witnessed Warren's aggressive behavior first-hand. Once, Alberts answered Bliss's phone after Warren had left numerous voicemails. Warren told Alberts that he took Warren's wife, and Warren was going to "wreck" and "smash" Alberts. Another time, in

1

November 2015, Alberts called Warren in response to his request for Alberts' number. Again, Warren accused Alberts of taking Warren's wife and threatened to "wreck" Alberts.

Then, in February 2016, Warren was in town and went to Bliss's apartment to pick up his sons. Warren banged on the door and yelled that he wanted to talk to Alberts. When Bliss opened the door, Warren blocked Bliss from closing the door and yelled at Alberts to come outside. Alberts refused and called the police, which prompted Warren to leave. Thereafter, Alberts began keeping his handgun in his car in case he needed to protect himself or Bliss.

A couple of weeks later, Warren planned to pick up his sons at Bliss's apartment on February 20 at noon, but on February 19, Warren informed Bliss that he would like her to bring the boys to him at 6 p.m. on February 20. Alberts suggested Bliss offer Warren one hundred dollars to pick up the boys as planned. Warren accepted this offer.

On February 20, Alberts decided to confront Warren about his treatment of Bliss. That morning, Alberts lied to Bliss about going to run an errand. Instead, Alberts went to the home of Warren's parents to confront Warren. Warren's car, however, was not there. Alberts waited for Warren for five to ten minutes. When Warren did not show, Alberts drove back to Bliss's apartment complex, put his holster and gun on his hip, and waited in his car for Warren to arrive to pick up the boys.

When Warren drove into the apartment complex, Alberts got out of his car and flagged Warren down while walking toward Warren's car. Warren stopped, rolled down his window, and said something profane. Alberts stepped closer to the car. Warren motioned as though he was going to unbuckle his seatbelt, and Alberts assumed Warren was going for his seatbelt. Alberts then reached for his gun and shot Warren fourteen times, emptying the clip and killing Warren, who remained seat-belted in his car.

Alberts was charged with first degree murder, and the case proceeded to trial. The State argued that Alberts had devised an elaborate plan to get Warren to Bliss's apartment so that Alberts could murder Warren, including offering Warren one hundred dollars to pick up his sons. The State called fifteen witnesses, including residents of the apartment complex, employees of the coroner's office, and officers who responded to the scene and investigated the case. The State introduced various exhibits including recordings of Alberts' arrest and his interrogation.

After the State rested, Alberts testified in his own defense. He claimed that he did not intend to kill Warren when confronting him, and Alberts did not know why he pulled the trigger

but that it may have been due to his concern that Warren was going to get out of the car and come at Alberts. Alberts asserted he acted in self-defense and in the heat of passion so he committed voluntary manslaughter or, at most, second degree murder.

The district court instructed the jury on first and second degree murder, voluntary and involuntary manslaughter, and self-defense. Regarding self-defense, the State requested a nonpattern jury instruction, providing a defendant cannot claim self-defense if he intentionally put himself where he knew or believed he would have to invoke its aid. The proposed instruction was based on *State v. Jurko*, 42 Idaho 319, 330, 245 P. 685, 688 (1926). Alberts' counsel objected, arguing the proposed instruction improperly shifted the burden from the State to prove that homicide was not justifiable.

In response, the district court modified the proposed instruction to expressly state that "the burden is on the prosecution to prove beyond a reasonable doubt that the homicide was not justifiable." The district court then inquired, "would [that addition] make [the proposed instruction] a correct statement of the law?" to which Alberts' counsel responded affirmatively, "Yes." Thereafter, Alberts' counsel requested that the district court remove from the proposed instruction a sentence stating that "the circumstances justifying a homicide must be such as to render it unavoidable." Over the State's objection, the district court removed this sentence.

After making Alberts' requested changes, the district court ultimately instructed the jury that:

> One cannot claim the benefits of self-defense if he intentionally put himself where he knew or believed he would have to invoke its aid. If you believe from the evidence, and beyond a reasonable doubt, that [Alberts] sought a meeting with the deceased for the purpose of provoking a difficulty with the deceased, or with the intent to take the life of the deceased or to do him such serious bodily injury as might result in death, then [Alberts] would not be permitted to justify on the ground of self-defense, even though he should thereafter have been compelled to act in his own defense. The burden is on the prosecution to prove beyond a reasonable doubt that the homicide was not justifiable. If there is a reasonable doubt that the homicide was not justifiable, you must find [Alberts] not guilty.

The jury acquitted Alberts of first degree murder but returned a verdict for second degree murder. The district court imposed a life sentence with thirty years determinate. Alberts timely appeals and challenges the self-defense jury instruction.

3

## II.

## STANDARD OF REVIEW

Whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Severson*, 147 Idaho 694, 710, 215 P.3d 414, 430 (2009). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Bowman*, 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct. App. 1993).

## III.

## ANALYSIS

Alberts acknowledges that he did not object to the jury instruction on self-defense as an incorrect statement of the law. On appeal, however, he argues it is a misstatement of the law concerning justifiable homicide. Because Alberts did not object to the jury instruction as modified, his claim of error on appeal is reviewed under the fundamental error doctrine. Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Idaho decisional law, however, has long allowed appellate courts to consider a claim of error to which no objection was made below if the issue presented rises to the level of fundamental error. *See State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007); *State v. Haggard*, 94 Idaho 249, 251, 486 P.2d 260, 262 (1971).

In *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), the Idaho Supreme Court conducted a comprehensive analysis of the fundamental error doctrine and the circumstances under which the review of an unobjected-to error is appropriate. The *Perry* Court held that an appellate court should reverse an unobjected-to error when the defendant persuades the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affected the outcome of the trial proceedings. *Id.* at 226, 245 P.3d at 978.[1]

---

[1]     Recently, the Idaho Supreme Court clarified the second and third prongs of the fundamental error doctrine in *State v. Miller*, ___ Idaho ___, ___ P.3d ___ (2019). *Miller*, however, is still subject to a petition for rehearing and is not yet a final decision. Because this case's resolution turns on the first prong of *Perry*, which is unaffected by *Miller*, we continue to cite to *Perry*.

4

On appeal, Alberts asserts that "if a defendant in a homicide prosecution presents *prima facie* evidence of self-defense, it then becomes the State's burden to disprove, beyond a reasonable doubt, the allegation that the killing was justified and, therefore, lawful." He contends that "any jury instruction which lowers the State's burden of disproving a defense of justifiable homicide is violative of due process." Based on this assertion, Alberts contends that the district court's jury instruction on his claim of self-defense, which was based on *Jurko*, improperly lowered the State's burden of proof and thereby violated his unwaived constitutional right to due process in satisfaction of the first prong of *Perry*.

Resolution of Alberts' argument is controlled by this Court's decision in *State v. Jimenez*, 159 Idaho 466, 362 P.3d 541 (Ct. App. 2015). In that case, Jimenez shot his brother multiple times and was charged with aggravated battery and unlawful possession of a firearm. *Id.* at 469, 362 P.3d at 544. The district court gave the pattern jury instructions for self-defense, and Jimenez did not object. *Id.* The jury found Jimenez guilty and he appealed, arguing that the self-defense jury instructions misstated the law. *Id.* at 470, 362 P.3d at 545. Specifically, he argued the statement that "self-defense is only available where the defendant acts in response to the danger presented and 'not for any other motivation'" was an inaccurate statement of the law. *Id.* "According to Jimenez, this alleged misstatement effectively diminished the State's burden of proof, allowing the State to disprove Jimenez's affirmative defense by showing that he *also* acted out of 'anger or to teach [his brother] a lesson.'" *Id.*

This Court in *Jimenez* applied the fundamental error doctrine as articulated in *Perry*. Addressing the first prong in *Perry*, this Court noted that the Idaho Supreme Court has held that "a shift in the burden of persuasion from the State to a defendant does not implicate the Constitution." *Jimenez*, 159 Idaho at 470, 362 P.3d at 545. Accordingly, this Court concluded that:

> [T]here can be no violation of the United States Constitution or the Idaho Constitution when a jury instruction merely diminishes the State's burden of disproving a defendant's affirmative defense.
>
> Even [assuming] that the instruction did, in fact, misstate the law and diminish the State's burden of disproving Jimenez's affirmative defense, this does not constitute a violation of Jimenez's due process rights under the United States Constitution or the Idaho Constitution. Jimenez has failed to meet his burden of proof under the first prong of the *Perry* analysis. Therefore, Jimenez has not demonstrated fundamental error.

*Jimenez*, 159 Idaho at 471, 362 P.3d at 546 (footnotes omitted).

5

Similarly, Alberts' appeal fails even assuming (without deciding) that the district court's jury instruction based on *Jurko* was an inaccurate statement of the law. As in *Jimenez*, Alberts' argument is that the instruction inappropriately lowered the State's burden of proof on his claim of self-defense in violation of due process. This purported error is the exact same error the *Jimenez* Court held is inadequate to satisfy the first prong of *Perry*, and the fundamental error analysis in *Jimenez* remains sound.

Alberts acknowledges that under *Jimenez* "a misstatement of the law of self-defense can never be a due process violation." Regardless, he urges this Court to overrule *Jimenez* as manifestly wrong pursuant to *State v. Humpherys*, 134 Idaho 657, 8 P.3d 652 (2000). *Humphreys* provides, "[T]he rule of stare decisis dictates that we follow [controlling precedent] unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless overruling it is necessary to vindicate plain, obvious principles of law and remedy continued injustice." *Id.* at 660, 8 P.3d at 655.

In reaching the conclusion in *Jimenez*, this Court relied upon two United States Supreme Court cases:

> [T]he Due Process Clause of the United States Constitution does not require the State to disprove a defendant's affirmative defense. *See Martin v. Ohio*, 480 U.S. 228, 236, 107 S. Ct. 1098, 1103, 94 L. Ed. 2d 267, 275-76 (1987); *Patterson v. New York*, 432 U.S. 197, 210, 97 S. Ct. 2319, 2327, 53 L. Ed. 2d 281, 292 (1977). In *Martin*, the United States Supreme Court reiterated its holding in *Patterson*, acknowledging that when the Fifth Amendment was adopted and the Fourteenth Amendment ratified, the common-law rule regarding affirmative defenses, including self-defense, imposed the burden of proof upon the defendant. *Martin*, 480 U.S. at 235-36, 107 S. Ct. at 1102-03, 94 L. Ed. 2d at 275-76. Although many states subsequently abandoned the common-law rule-- requiring the prosecution to prove the absence of self-defense once properly raised by the defendant--such practice was not constitutionally required. *Id.* The Court held that states continuing with the common-law practice of requiring defendants to prove their affirmative defense did not violate the Constitution. *Id.*

*Jimenez*, 159 Idaho at 470, 362 P.3d at 545.

Alberts acknowledges that these Supreme Court cases hold that due process does not require the prosecution to disprove an affirmative defense but contends they are inapplicable because they address state law requirements that the defendant prove the affirmative defense versus the requirement in Idaho that the State disprove the defense. Regardless, this contention fails to address the rule that a jury instruction, which purportedly lowers the State's burden to

disprove self-defense, is not a due process violation.  Accordingly, we are not convinced *Jimenez* is manifestly wrong.

Moreover, even assuming *Jimenez* were not fatal to Alberts' appeal, Alberts fails to meet the second and third prongs of the fundamental error doctrine, particularly following the recent clarification of that doctrine in *State v. Miller*, ___ Idaho ___, ___, ___ P.3d ___, ___ (2019). The district court granted both of Alberts' requests to add and delete language from the instruction.  That Alberts did not request additional changes to the instruction is clear evidence that his decision not to do so was tactical.  *Id.*

## IV.
## CONCLUSION

Alberts fails to satisfy the elements of the fundamental error doctrine.  Accordingly, we affirm his judgment of conviction.

Chief Judge GRATTON and Judge HUSKEY **CONCUR**.